## THE PEOPLE *on rel.* JOHNSON *a.* ERBERT.

*Supreme Court, First District; General Term, February,* 1864.

### HABEAS CORPUS.—CUSTODY OF CHILD.

The Supreme Court of this State, like the former Court of Chancery, exercises a general control over all minors.

This power is for the benefit of the child, and is not to be defeated by one having a mere legal title to the custody of the child, whether that title or right arise from a natural relationship or from an act of law.[*]

[*] The later cases on this subject have gone far to qualify the old rule, by which the father was said to have an absolute right, superior to that of the mother, and all others. The question is ably discussed in the matter of Gregg (5 *N. Y. Leg. Obs.*, 265), and put upon the ground, now more generally recognized, that the interest of the child is the paramount consideration.

The following decisions at chambers in the Supreme Court, in the First District, which have not been reported, further illustrate the general subject.

THE PEOPLE *on rel.* FREDERICA M. NEIDLINGER *a.* MARY LOHMAN, commonly called Madam RESTELL. (*April*, 1858.)

CLERKE, J.—The writ of habeas corpus was issued in this case, requiring the defendant to produce before the court the infant child of the relator, alleged to be unlawfully detained, or to have been unlawfully disposed of by the said defendant.

The relator, an unmarried woman, was delivered of a male child on the 30th of August, 1855, at the house of the defendant, who styles herself, in the return to this writ, to be a midwife and female physician. Almost immediately after the delivery the child was taken from the relator by the defendant, and since that time the mother has never seen him. In the return, the defendant denied that she had the child in her custody, or under her power, or that she detains him, or ever did detain him. She also alleges that the relator solicited her to procure some person who would adopt the child, and that accordingly, on the day of the accouchement, the relator freely and voluntarily surrendered him to one Mrs. Wright, with a request that he should be given to the lady who had expressed a desire to adopt him, and that he was soon after disposed of and given away for adoption.

The court, in the first instance, on the 8th of January, 1857, after the return, thought proper to send the case to a referee, to report whether the said child was at any time in the possession or under the control of the defendant, and whether the defendant parted with the custody of the child; and if so, to whom, and under what authority she disposed of him; and if the defendant knew, or had any means of knowing, in whose custody the child then was.

A subsequent order, bearing date January 24, 1857, was substituted in the place of the order of the 8th of January, somewhat modifying the previous order,

Where a father has voluntarily suffered the custody of his children to be committed, by indentures, to third persons, upon whom the indentures are binding, the court will not restore them to him unless it is for the benefit of the children to do so.

In 1860 the wife of Mr. Johnson, the relator, died, leaving him three children, aged eight, six, and five years.   In April,

and directing the referee to report whether the child was in the custody of the defendant, or under her power or restraint; or if not, whether he had been transferred to another; and if so, at what time, for what cause, and by what authority the transfer took place, and whether said transfer, if any, was made by the consent of petitioner, and at her request.   This order also directed the referee to append to his report the testimony which should be taken before him in this proceeding.

The referee now reports, from the proofs and allegations taken and made before him, that the child was in the possession and under the control of the defendant in the month of August, 1855; that, although there was some evidence before him that the relator was willing or was induced to part with the child, yet, he states, there was no evidence to show what really became of him after he had passed into the hands of the defendant, and that she did not show what she had done with the child, or what ultimately became of it.   He consequently reports, as his conclusion, that the defendant has not parted with the child, and that the defendant is responsible to this court for the same.

I think that this report is plainly justified by the testimony, although the question whether the relator was willing or was induced to part with the child—in other words, whether she consented that any person should adopt him—has no pertinency to the questions properly and legally involved on this inquiry; except, perhaps, so far as to assist the court in determining hereafter, if the child should be produced, whether the mother was a competent person to have the care of him.   For, it may with some plausibility be affirmed, that a mother who was willing and even anxious to part with her infant immediately after his birth, must be destitute of that affection without which no person is capable of suitably rearing and bringing up a child.   As far as the defendant is concerned, she cannot avail herself of such an allegation.   A child cannot be disposed of or alienated like a chattel.   A father, even, cannot contract away the custody of his legitimate children.   As Mr. Justice Cowen remarks, in The People *a.* Mercein (3 *Hill*, 399, 411), "Those countries in which a father has a general power to dispose of his children, have always been considered barbarous.   Our own law has never allowed the exercise of such a power, except for some specific and temporary purpose—such as apprenticeship during the father's life, or guardianship after his death."

The only questions now to be considered, therefore, are whether the child was at any time in the possession or under the control of the defendant; and if so, whether the defendant has parted with said child.

.We have seen that the referee has reported that he was in the possession and under the control of the defendant in the month of August, 1855.   She has entirely failed to give any satisfactory account of what has become of him since that time.   Our statute declares that it is not enough for the person upon whom this writ shall have been duly served (2 *Rev. Stat.*, 566, § 32), to state

1861, he left the children with Mr. Erbert, the defendant, promising to pay him $12 per month for the support of the two boys, and allowing him to adopt the third one, Anna, till such time as he could obtain the means to support them him-

---

" whether he have or have not the party in his custody, or under his power or restraint." " If he shall have had the party in his power or custody, or under his restraint, at any time prior or subsequent to the date of the writ, but has transferred such custody or restraint to another, the return shall state particularly to whom, at what time, for what cause, and by what authority such transfer took place."

Assuming, therefore, as I do, that the defendant had this child in her power and custody on the 30th day of August, 1855, which I hold to be a fact fully established in this case, and which she can no longer gainsay, she must make a further return under oath, full and explicit; and if she still insist that she has not the child now in her power and custody, and if she has transferred him to some other person, as is alleged, for adoption, she must specify particularly to whom, at what time, for what cause, and by what authority such transfer took place.

I will give her ten days from the service of the order to be entered on this decision to make this further return, in failure of which it will be my duty, pursuant to section 36 of the statute already mentioned (2 *Rev. Stat.*, 566), to issue an attachment against her, commanding the sheriff to apprehend her, and bring her before this court.

---

In the MATTER OF THE PETITION OF CATHARINE LESSLIER. (*September*, 1858.)

INGRAHAM, J.—The evidence in this case discloses a state of facts in regard to the child of the petitioner which has rendered it extremely difficult to arrive at a satisfactory conclusion and decision. The petitioner, while unmarried, became the mother of the child, and at the age of six months she agreed to bind the child to the respondents, for the purpose of carrying out an agreement entered into by her to give the child to them. An instrument was executed by which the child was bound to one of the respondents, to be adopted by them as their child. The child was placed in their possession, and has since been supported, and clothed, and educated by the defendants in a suitable manner as their own child, and, the evidence shows, in a manner calculated to give him a good edu-,cation. From that time the mother has in no way aided in the support or care of the child, not even so much as seeing him or inquiring as to his welfare. For eleven years the respondents have acted towards the child as his parents, and claim now to be attached to him as an adopted child to whom they propose to give their property. During the greater part of this time the mother was leading an abandoned life. From her own statement, and that of her husband, she has reformed, and during the last five years she has been a member of a church. The mother of a child having no known father is undoubtedly entitled to the custody of it. She is its only parent, and is alone bound for its support, and if this was the only question in the case I should have no hesitation in ordering the child to be delivered to its parent. The indenture signed on behalf of the child, so far as it purports to come from the commissioners of the almshouse, is not

self. In March, 1862, at the instance of Erbert, who claimed that the father had neglected to perform his agreement, Justice Welsh, a police justice of the city of New York, committed the children to the care of the commissioners of charities and

valid, inasmuch as it is not executed in conformity to the provisions of the statute. Nor is it binding upon the infant as indentures of apprenticeship. It purports to be a binding for the purpose of adoption of a child ; no such binding is authorized by our laws, and if the infant sought to avoid it, I am of the opinion that it would give the respondents no right to reclaim him against his will. In addition to the binding by the almshouse commissioners, is the consent of the mother to this contract with the respondents, for the clothing, board, and education of the child until he arrives at the age of twenty-one years. Under such circumstances there is no hardship in saying that the interest of the infant should be the first consideration in the decision of this case. The abstract right of the mother to the child may be thus waived by her own agreement ; and unless it appears manifestly for the interest of the infant to take the child from the respondents and deliver it to the mother, the duty of the court would be discharged by merely inquiring whether there was any improper restraint, and if there was any, by discharging the child therefrom. I have less hesitation in such a conclusion, when I consider that the mother has never shown any regard or affection for the child since it was six months old, but has left the whole burden and expense of its support and education to the respondent. A case similar to the present was that of the McDowles, (8 *Johns.*, 328), where the children, aged eight and eleven years, were bound to one of the society of Shakers, to be brought up in their faith. The court there says : " The infant is not bound by the indenture, but the question is as to the relief which ought to be granted. There is nothing to show any improper treatment of the infants, and that the party to whom the father intended to bind them has not faithfully performed the stipulations in the indenture. This is not a case in which the father has any equity or any right to complain. He may be bound by the indenture though the infant is not." These remarks may very appropriately be applied to the present case, so as to leave the disposition of it to rest entirely upon what shall be deemed most for the welfare of the child. Upon this question, however, there is some considerable difficulty. If the respondents continue in the same course of life that the evidence shows to have existed for years past, their house is not a proper place to bring up this child. The statements made on their behalf, like those on the part of the mother, are that they have abandoned such immoral courses, and have also reformed. It appears that the suggestion of the respondents' counsel would, under all the circumstances, be most for the benefit of the infant, if any satisfactory arrangement can be made to secure that result. That suggestion is, to place the child in a suitable boarding-school at the expense of the respondents. In the Matter of Waldron (13 *Johns.*, 418), Chief-justice Thompson says : " In cases of writs of habeas corpus directed to private persons to bring up infants, the court is bound to set the infant free from an improper restraint, but they are not bound to deliver the infants over to any particular person. This must be left to their discretion, according to circumstances that shall appear before them." From the examination of the child it is apparent that he is under no restraint from which he desires to be relieved ; but that he wishes to remain with the respondent. It is proper to add that this application was returnable before me, and not before

correction, who indentured them out to 'Mr. and Mrs. Erbert. Meanwhile Johnson was keeping a saloon in Chicago.

Johnson applied to Mr. Justice Gould for a habeas corpus to obtain the custody of the children. After hearing the case, the

the court, and, as in the case last referred to, it would have·been more properly made to the court where the equity powers of the court could give more suitable directions as to the care and custody of the child than can be ordered by a judge in this proceeding. For the purpose of enabling the respondents to carry out the suggestion above mentioned, I shall make no order to deliver the child to the petitioner, but I direct this matter to be adjourned to the second Monday of October, at 10 A.M., before me. In the mean time the respondent must make suitable provision for the child at a suitable boarding-school, so that it may then appear that the interests and welfare of the child will be best promoted by leaving him under their charge. If no such arrangement is made before that time, the petitioner may renew this motion on the adjourned day.

---

In the MATTER OF THE PETITION OF EMMA J. ROBINSON AND OTHERS, INFANT CHILDREN OF REUBEN B. ROBINSON. (*July*, 1859.)

In 1853, Reuben B. Robinson was divorced from his wife, on the ground of adultery committed by the husband. The custody of the children was given to the mother, and the sum of $200 was ordered to be paid to her for the support of each of them during minority. The mother having deceased, the children now petitioned the court for the appointment of a trustee, to receive and pay over the moneys which would have been paid to the mother for their support.

This was opposed by the father, on the ground that the order of the court expired with the death of the mother. He stated that he was willing to support the children at his own house, and claimed that he was entitled to their custody.

*Held*, that so long as the mother lived the judgment operated to give her the custody of the children, and to compel the father to provide her with the means for their support. Beyond that period the judgment ceases to have any effect. The father's rights over the children being restored, as he is bound to provide for all their wants, he is also entitled to their care and custody. The statute also shows that the petitioners are in error in supposing that a trust was created by the judgment of divorce, which continued for the benefit of the children after their mother's death. By the provisions of the Revised Statutes in regard to such payments (2 *Rev. Stat.*, 148, § 58), the provision for the children is to be made by an order, or between the parties. The order or judgment is only to be between the parties—husband and wife. When that relation is terminated by the death of either, the object of the order and its vitality ceases, and the surviving party is restored to his or her natural rights.

The prayer of the petitioners is denied.

---

In the MATTER OF MARY JANE McKAIN, AN INFANT, &c. (*April*, 1863.)

LEONARD, J.—The office of this writ of habeas corpus is to liberate the person of a child when restrained of its liberty or unlawfully detained. When the child is of very tender age, as in the present case, it is the duty of the court to deter-

judge remanded the children to Mr. and Mrs. Erbert, rendering the following opinion, July 1, 1863.

GOULD, J.—In the view I take of this matter, it is not necessary for me to pass upon the legality of the indentures, any further than to hold that, as far as the respondent Erbert is concerned, they are voluntarily and legally entered into, and that he cannot, now or ever, be allowed to question their validity, or evade his responsibility under them.

This being so, and there being thus legally secured to these children a home, where, the evidence shows, they can be, and in all human probability will be, well provided for, and kindly and carefully brought up to some reputable mode of life, the case is one to be considered under the general equitable powers of this court. This court, like the former Court of Chancery, exercises a general care and custody over all minors, and "this power is for the benefit of the child, and is not to be defeated by one having a mere legal title to the custody of the child," whether that title (or right) arise from a natural relationship, or from an act of the law.

As to the daughter Anna, while the relator, in terms, denies that he gave her to the respondent, to be by him and his wife adopted as their own child, he does not state how, or upon what terms, he did leave her with Erbert, although he does state that he left the boys there, upon an agreement to pay for their board. This failure to give any affirmative version, on his part,

---

mine for the child when it is restrained of its liberty or unlawfully detained. The court, in such cases, must be guided by the true interests of the infant, in respect to its nurture, education, sex, and associations. The court should decide as the infant would, if possessed of the discretion to determine rightly and truly for herself. In the present case the child is a female. The mother has associates, at times, improper for the correct rearing of a daughter. The grandmother, who has the custody of the child at present, has the advantages of virtuous associations for the child, and is willing and desirous to continue the charge which she has voluntarily and affectionately assumed over her little granddaughter for the last five years.

In my opinion, I should greatly err if I held that the child is restrained of her liberty or unlawfully detained. The mother must, however, be permitted to visit the child once a week in the daytime, at the house of the grandmother, at such hour of the day as the grandmother may appoint, having proper reference also to the convenience of the mother.

The writ is therefore discharged, and the child is continued in the custody of the grandmother.

of the way in which she was committed to Erbert's care, is strong ground for believing the latter's statement on that subject, and the testimony of Birdsall renders it entirely clear that the relator, on this point, has sworn to what is false. And as he has thus done, in a very material point, he can hardly claim to be credited on any other matter.

The evidence of the servant girls is not of the most credible or creditable kind, to be sure; but it is supported by the confessions, or rather statements, of the relator to Birdsall; and it is not specifically contradicted by the relator, or on his behalf. This evidence shows him to be any thing but a fit custodian for these young children.

Further, it is in evidence that he remains indebted to a large amount, according to the showing of the assignment, and the proof that the assigned property, when properly applied, would not pay more than one-fifth of the debts enumerated in the schedule; and as against this, there is nothing but his general, unsupported statement that he is of ability to take proper care of these children. Any statement he may make requires corroboration; and the fact that he is the keeper of a drinking-saloon in Chicago, is not the best kind of supporting evidence, any more than it is evidence that the place to which he would take the children is a proper one for their mental or moral training.

It is stated that the relator has now married a second wife, who has two children of her own, and is thus in a condition to take proper care of these young children. Of this wife, the court has this knowledge: that during the pendency of this proceeding, and while the law was the real custodian of the children, she did, in disregard of the action of the court, and to defy its control, by fraud and force possess herself of one of the children. This can hardly be deemed a very high recommendation of her as a fit guardian of their tender years, and certainly does not call upon the court to exercise its authority in her favor, she certainly having neither natural nor legal right to the custody of these children, and probably having no special affection for them. The court should hesitate long before committing them to her.

On the other hand, there seems no room to doubt that the respondent and his wife are really fond of the children, are

treating them as if they were their own, and are willing, as well as able, to nurture them kindly and bring them up reputably. Indeed, there seems no motive, other than affection for the children, to induce this respondent to have kept them so long, to have assumed by the indentures the obligation to continue the care of them, and to defend this proceeding. And as the children are conceded to be attached to him and his wife, and to be satisfied with their situation, and to prefer not to live with the relator, there seems no reason why the court should interfere with a custody lawfully acquired.

The children are remanded to the care and custody of the respondent.

The relator then obtained a writ of certiorari, to bring the matter before the court at general term for review.

*Ira D. Warren,* for the relator, insisted—I. That the indentures were void, because the children were not within the "Act to Provide for the Care and Instruction of Idle and Truant Children," under which the commitment and indentures were made.

II. That the gift of the custody of Anna was void as an agreement, and as a delegation of power it was revocable.

III. That the right of a father to the custody of the children is superior to that of any stranger.

*Wakeman & Latting,* for the defendants.

By the Court.*—Sutherland, J.—We are all of the opinion that the proceedings before the justice on the habeas corpus, and his final order therein, as to the children, should be affirmed,—that no sufficient reasons have been shown for reversing the order which he made, in the exercise of a discretionary power.

Order affirmed.

---

* Present, Leonard, P. J., Clerke and Sutherland, JJ.