---

(9 Misc. Rep. 240.)

## In re WENTZ'S ESTATE.

(Surrogate's Court, Cattaraugus County.    June, 1894.)

1. SURROGATES' COURTS—CLAIMS AGAINST MINORS' ESTATES—JURISDICTION.
    The surrogate's court has power to determine the validity of disputed claims against the estate of a minor.  In re Stoehr's Estate (Surr.) 23 N. Y. Supp. 280, followed.

2. GUARDIAN AND WARD—CUSTODY OF MINORS.
    Where a minor, 10 years old, has been brought up from early infancy by a married woman, of good character, who has treated him as a son, and to whom he is very much attached, the custody of the minor will not be taken away from her and given to his guardian.

Application to compel the guardian of Ramel Wentz, a minor, to reimburse petitioner for past support, and allowance for future support, of said minor.   Granted.

V. C. Reynolds, for petitioner.

E. D. Northup, for guardian.

DAVIE, S.   On the 16th day of April, 1894, Mrs. Sarah Blair filed her petition, alleging that she is the person with whom the minor resides, that she has supported and maintained him for several years last past, that he has funds in the hands of his guardian properly applicable to his support, and that the guardian refuses to make any allowance out of the funds of the estate for the maintenance of the minor, and praying that a decree be made directing the guardian to pay to the petitioner some proper sum to reimburse her for the expense incurred in the support of the minor in the past, and for an allowance for his future support.   On the return day of the citation the guardian interposed an answer controverting the validity of the claim for past support, and alleging that the welfare of the minor is being jeopardized by continuing his residence with the petitioner, and asking that his rights, as guardian, to the custody of the minor, be determined, as a condition precedent to any liability on his part, as such guardian, for the support of the minor.

The authorities are conflicting as to the jurisdiction of the surrogate's court to determine the validity of disputed claims against the estate of a minor.   This jurisdictional question arose in Welch v. Gallagher, 2 Dem. Sur. 40, and in Re Stoehr's Estate (Surr.) 23 N. Y. Supp. 281, and in each instance it was held that no such power existed.   But in Re Kerwin, 59 Hun, 589, 14 N. Y. Supp. 353, the general term holds directly to the contrary, and in discussing the somewhat general authority to regulate the conduct of guardians conferred upon surrogates' courts by the provisions of subdivision 7, § 2472, and section 2846, of the Code of Civil Procedure, says, "We know of no authority which restricts the jurisdiction of the surrogate to cases where the demand for the support is undisputed." Consequently, it would seem that, if the prayer of the petition for reimbursement for past support is to be denied, it must be upon some other ground than that of want of jurisdiction; but, upon a careful review of all the evidence, I am clearly of the opinion that the situation will not justify an allowance for maintenance of the minor prior to the date of filing the petition in this proceeding, and the facts leading to that conclusion will be discussed to some extent hereinafter.   So, then, this proceeding resolves itself into an application, under the sanction of section 2846 of the Code of Civil Procedure, for a decree making suitable directions for the minor's future maintenance.

The guardian is an uncle of the minor, and was appointed upon his own petition on the 5th day of July, 1893, and directly thereafter he received the sum of about $1,700, the amount of the estate in the hands of a former guardian, upon his resignation and judicial settlement as such.   The minor is of the age of 10 years.   His mother died when he was 10 months old.   Upon her death the father

procured a home for the minor with the petitioner, where the father and this minor and an elder brother continued to reside until the death of the father, about 5 years ago.   Prior to his death the father paid petitioner for the support of the minor, but since the 6th day of July, 1889, she has received no remuneration whatever for the maintenance of the minor, aside from the sum of $15 paid her by the guardian.   The petitioner is a married lady, of the age of 54 years, residing with her husband in the village of Salamanca, having a comfortable home; a woman of irreproachable reputation and integrity, with no children of her own residing at home; kind and affectionate towards the minor, watching over him with a tender regard and motherly solicitude.   The minor, having no recollections of his own mother, and no remembrance of any other home, has become greatly attached to Mrs. Blair, respects her authority, and loves her as a mother, and, under her influence and tutelage, has learned good manners and morals.   No closer relations could exist between this minor and Mrs. Blair, or his interests be better protected, were they in fact parent and child.

The guardian, in justification of his refusal to make any provision for the minor's support while he remains with Mrs. Blair, urges that, by virtue of his appointment as general guardian of the person and estate of the minor, he is vested with an arbitrary authority to determine the place of domicile of his ward, and that he is reasonably exercising such authority while endeavoring to coerce the minor, by means of his refusal to contribute to his support, to abandon the only home he has ever known.   It is true, as a general rule, that the rights and duties of a guardian relating to the person of the ward are those of a parent.   Ordinarily, the guardian has a right to the custody of the ward, and no court will interfere with a reasonable exercise of such right; but such right is by no means an absolute and arbitrary one.   The paramount duty of the guardian is to make such a disposition of the minor's custody as will best promote his interests, and, if the guardian fails in so doing, it is not only the right, but the imperative duty, of the court to interfere.   The single consideration in determining whether he is properly performing the duties of his trust is the welfare of the ward.   The guardianship is not created for the personal benefit of the guardian, to any extent.   The individual interests and wishes of the guardian or of Mrs. Blair cannot be considered.   The single question presented is, what is best for the minor?   People v. Walts, 122 N. Y. 238, 25 N. E. 266; In re Welch, 74 N. Y. 299.

It appears from the evidence that a proceeding was commenced several years ago, by habeas corpus,—instituted by the former guardian,—to procure the custody of this minor from Mrs. Blair; and while the result of that proceeding is not disclosed, the minor was permitted to remain in her custody.   There is no direct proof upon that subject, but the suggestion is made, and the inference from all the facts in the case is reasonable, that Mrs. Blair, in consequence of her solicitude to retain the custody of the child, proposed to do so without expense to his estate.   That fact, however, should not be permitted to defeat this application, for there is no pretense or sug-

gestion that such arrangement was made for any definite length of time, and the filing of the petition in this proceeding was sufficient notice that Mrs. Blair did not feel able to continue the gratuitous maintenance of the minor. The desire and intention of the guardian is to take the minor to reside in his own family. Will the interests of the minor be subserved by so doing? I am far from being convinced of the wisdom or propriety of such a course. The minor, who is a bright and intelligent youth, expresses a decided preference in this matter. Being sworn as a witness, he said: "I wish to live with Mr. and Mrs. Blair. They are kind to me." And, when asked for a reason for such preference, he said: "I love Mrs. Blair,—no one better. That is my home." It is undoubtedly true that too much weight ought not to be given to a mere childish preference; and, as was so well said by Justice Mason in People v. Wilcox, 22 Barb. 183, where this same subject was considered:

"This is no more than we should expect. It is the infant heart speaking its simple language in behalf of those who have nurtured, fed, and watched over it from its first impressions and recollections, for a period of almost nine years. It is the hand that has fed, the eye that has watched, and the heart that has showered its smiles and caresses upon the infant for the first nine years of its existence, that may confidently claim its love and affection."

Yet, in this case, I am satisfied that the expressed preference of the minor is more the result of intelligent thought and consideration than of mere childish sentiment. The petitioner in this case is in every respect a proper person to have the custody of the minor. Her influence over him, tempered as it is by an ardent maternal affection and earnest solicitude for his welfare, is developing him in intelligence, manhood, and integrity; and it is difficult to determine with any degree of certainty what might result from breaking up, against the minor's earnest protest, his present relations, and surrounding him with new and untried influences. It is an experiment which ought not to be tried. The guardian himself, upon his cross-examination, concedes the equity of the petitioner's claim for assistance, in case the minor is left with her. He is asked, "Did you ever tell any one that Mrs. Blair was entitled to anything for the support of Ramel?" to which he answered: "I think I told Mr. and Mrs. Blair so. I thought so at the time, and think so now. I think Mrs. Blair ought to have pay for her trouble." After a careful consideration of all the evidence, I am unable to see how the guardian is justified to any extent in refusing to contribute out of the estate to the support of the minor simply because the minor declines to abandon his present home, and reside with the guardian. A decree will be accordingly entered, denying the prayer of the petition, in so far as it relates to a claim for past support, but directing the guardian to pay to the petitioner, out of the funds of the estate, the sum of $2.50 per week for the maintenance of the minor until the further order of the court herein; such payments to date from the filing of the petition herein. Ordered accordingly.