(98 App. Div. 244)

### PEOPLE ex rel. ELDER v. ELDER.

(Supreme Court, Appellate Division, Second Department. November 18, 1904.)

1. PARENT AND CHILD—CUSTODY OF CHILD—HABEAS CORPUS.

Domestic Relations Law (Laws 1896, p. 222, c. 272) § 40, provides that a husband or wife, being an inhabitant of New York, living in a state of separation without being divorced, who has a minor child, may apply for habeas corpus to have such child brought before the court, and on return the court may award the custody to either parent for such time, etc., as the case may require. *Held* that, where relator had been divorced from her husband in another state, but was an inhabitant of New York, living in a state of separation from defendant, she was entitled to habeas corpus to obtain the custody of her infant son, though the foreign divorce was invalid.

2. SAME—EVIDENCE.

In a habeas corpus proceeding to obtain the custody of relator's infant son 11 years of age, facts *held* to justify an order awarding such custody to relator, instead of the boy's father, though the boy desired to reside with his father.

Appeal from Special Term, Kings County.

Habeas corpus by the people, on the relation of Ellen Therese Elder, against George W. Elder, to obtain the custody of a child. From an order awarding custody to relator, defendant appeals. Affirmed.

Joseph A. Burr, for appellant.
A. H. Hummel (David May, on the brief), for respondent.

PER CURIAM. The relator went from this state to South Dakota, and began an action for absolute divorce. While the suit was pending, the husband signed an agreement relative to permanent alimony, which provided that the wife might retain the custody and control of their infant son during his minority, or until her remarriage. The relator

obtained her decree of divorce, and was awarded therein the custody of the child. She returned to this state. At different times the child visited his father. On one occasion he did not return to the mother, and thereupon she obtained a writ of habeas corpus. Upon the hearing, the Special Term, after taking testimony, determined that the foreign divorce was invalid, but awarded the custody of the child to the mother, providing for stated visits to the father. The father appeals.

If the foreign divorce was invalid—and we do not think it essential to pass upon that question—still the relator, as an inhabitant of this state, living in a state of separation, was entitled to the writ, and might be awarded the custody of the child thereunder. Section 40, Domestic Relations Law (Laws 1896, p. 222, c. 272). Mother and father are now equal in their rights of guardianship over their child (section 51, Id.), and therefore the mother is not confronted, as heretofore, with the common-law preference for the father. It cannot justly be said that the relator voluntarily left her husband, and without cause refuses to live with him; for it is established, in part out of his own mouth, that he had asked her a number of times to quit their home to seek the divorce of some western state as the remedy for an unhappy marriage. He testifies that he spoke to her on the subject in November, 1901, "but she refused." Not only did he repeatedly suggest this step, but he countenanced her going in 1902, and facilitated her suit both by supporting her regularly meantime and by his personal appearance in that action. Even if she was unsuccessful, it was in spite of his suggestion and his active concert. After such banishment, a woman returning to her husband's house would leave her self-respect behind. The husband says that he asked her to return after he heard that the divorce which he wanted and which she sought was invalid. He told her to come back "if she wished," and she replied that she did not wish; that "she could not understand why I wanted to get rid of her at one time and want her back the next." Under the circumstances it cannot be said that this wife appears wayward or willful or capricious in living in a state of separation, and that she should not be listened to by the court.

The chief concern of the equity court was the welfare of the child, and the award is made with this end in view. People ex rel. Pruyne v. Walts, 122 N. Y. 241, 25 N. E. 266; In re Waldron, 13 Johns. 418; Schouler on Domestic Relations, § 248. We see no reason to disturb the disposition of this proceeding. We glean from the record that the mother is a woman of refinement and education, who has the money and the time to devote herself to the care of this young lad of 11 years of age, her only child. Her husband appears to be of a similar station in life, and the record does not show (indeed, there was no attempt made to show) that he is unfitted by his habits, morals, or associates to keep the lad with him. But it does appear that he lives in the country, that he is absent in the city every day, and that he has no relatives living in his house to whom the boy could be intrusted during the day. The welfare of the lad is best assured by placing him with his mother, who is in position to give to him her constant personal care, than with the father, whose personal supervision must necessarily be confined to the nighttime, when the lad should be abed, and who is compelled to leave him to strangers or hirelings throughout the days. We attach little

weight to the expression of preference made by the lad under these circumstances, for he avows equal love for each parent, and admits that each has shown him tenderness and love. We are justified in believing that, boy-like, he prefers the lesser restraint, and finds a promise thereof in the absence of his father, and of any who can stand in loco parentis in his father's home. His preference is founded upon no fact that can control. People ex rel. Pruyne v. Walts, supra; Schouler on Domestic Relations, § 251.

The order awarding the custody should be affirmed, with costs.