In the Matter of the Application of THOMAS F. LEE et al., Appellants, for a Writ of Habeas Corpus.

DE WITT H. LYON, as General Guardian of WILLIAM C. LEE, an Infant, Respondent.

Guardian and ward — Supreme Court may in proper case take custody of a child even from its general guardian — when Supreme Court in habeas corpus proceedings has refused to appoint the petitioner guardian of a child its order in effect gives custody of the child to its then custodians — when general guardian of such child appointed by surrogate may not take child from its custodians — when the Special Term should take evidence upon the issues and not decide upon the papers in habeas corpus proceedings.

1. Guardianship of the person does not always, under all conditions, give absolute right to the custody of the person. The Supreme Court, as the guardian of all infants, has inherent power, in a proper case, to take the custody of the child, even from its general guardian.

2. Where, upon return of a writ of habeas corpus demanding that custody of a child be taken from its custodians and given to the petitioner, the Supreme Court, after a hearing, denied the petition, the effect and purport of the order was the same as if it had stated that custody was given to the then custodians. And where, thereafter, upon petition for letters of guardianship, the surrogate, with the same parties contesting before him, having jurisdiction so to do, appointed a stranger guardian of the person and of the property of the infant, such guardian had no such absolute right to the custody of the child as to warrant his taking him from the possession of his custodians, which was the possession of the Supreme Court, without application to that court.

3. Proceedings having been instituted in the Supreme Court, by means of a writ of habeas corpus, to recover from the guardian custody of the child, upon the return and traverse to which other facts were alleged than those testified to on a previous hearing, the Special Term should have taken evidence upon the issues of fact presented instead of sustaining the writ upon the papers. (Code Civ. Pro. §§ 2031, 2039.) (*People ex rel. Keator* v. *Moss*, 6 App. Div. 414, distinguished.)

*Matter of Lee*, 176 App. Div. 141, reversed.

(Argued April 17, 1917; decided May 1, 1917.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 24, 1917, which reversed an order of Special Term sustaining a writ of habeas corpus and awarding the custody of William C. Lee, an infant, to the petitioners and dismissed the said writ.

The facts, so far as material, are stated in the opinion.

*Clinton T. Taylor* and *Arthur I. Strang* for appellants. The adjudication made by the Supreme Court September 15, 1915, directing the custody of the infant to be with the appellants is not affected by the issuance of letters of guardianship on June 20, 1916, to the respondent. (*Matter of Quinn*, 2 App. Div. 103; *Matter of Price*, 12 Hun, 508; *Lawrence* v. *Brady*, 56 N. Y. 182; *Keator* v. *Moss*, 6 App. Div. 414; *Townsend* v. *Van Buskirk*, 22 App. Div. 441; *Matter of Welch*, 74 N. Y. 299; *People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238; *Matter of Wagner*, 75 Misc. Rep. 419; *Sneider* v. *Sneider*, 96 N. Y. 88; *Marcein* v. *People*, 25 Wend. 64.) If the court believes other issues were involved which should be determined because of the allegations in the return it can modify the order so as to direct the taking of testimony on said issues, or if it should determine that the appointment of a guardian by the Surrogate's Court as regards custody was superior to the order made in the Mills' habeas corpus proceeding, then the order of the Special Term should be modified so as to send the matter back to Mr. Justice Tompkins, but in either case the order should be held good as an incidental order determining the temporary custody of the infant. (*People ex rel. Duryea* v. *Duryea*, 188 N. Y. 440.)

*Sydney A. Syme* and *Thomas Holden, Jr.*, for respondent. Habeas corpus will not lie to take a child from the custody of his duly appointed guardian of the person. (*People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238; *Burger* v. *Frakes*, 67 Iowa, 460; *Macready* v. *Wilcox*,

33 Conn. 321; *Cottrell* v. *Booth*, 166 Ind. 469.) The Surrogate's Court has concurrent jurisdiction with the Supreme Court to appoint a general guardian of the person of an infant. (Code Civ. Pro. §§ 2642, 2643, 2644, 2510, 2653, 2649.) Jurisdiction to appoint a general guardian of the person of an infant necessarily involves jurisdiction to determine who shall have the custody and tuition of the infant. (*Gelston* v. *Shields*, 16 Hun, 143; 78 N. Y. 275; *Burger* v. *Frakes*, 67 Iowa, 460; *Jenkins* v. *Clarke*, 71 Iowa, 552; *Keith* v. *Miles*, 39 Miss. 442; *Macready* v. *Wilcox*, 33 Conn. 321; *Cottrell* v. *Booth*, 166 Ind. 469; *Coltman* v. *Hall*, 31 Me. 196; *Derickson* v. *Derickson*, 4 Dem. 295; *Matter of Wagner*, 75 Misc. Rep. 419.) On an application to a Surrogate's Court for the appointment of a general guardian of an infant, the basic issue and the controlling consideration of the selection of such guardian of the person is the best interest and welfare of the child. (*Ex parte Dawson*, 3 Bradf. 130, 133; *Matter of Jaquet*, 40 Misc. Rep. 375; *Matter of Burdick*, 41 Misc. Rep. 346; *Matter of Crickard*, 52 Misc. Rep. 63; *Matter of McConnon*, 60 Misc. Rep. 22; *Matter of Wagner*, 75 Misc. Rep. 419.) The decree of the surrogate appointing the respondent herein the guardian of the person of the infant William Crossman Lee is conclusive as to all matters embraced within that decree, against the relators herein. (Code Civ. Pro. § 2550.) Even if the relators were wholly right in their legal position, it still remains that a question of fact is raised by the return, which must be tried, before the writ can be legally sustained. (*People* v. *Moss*, 6 App. Div. 414; *People* v. *Dewey*, 23 Misc. Rep. 237; *Matter of Lederer*, 38 Misc. Rep. 668; *Matter of Price*, 12 Hun, 508; *People* v. *Cooper*, 8 How. Pr. 288; *People* v. *Mercein*, 3 Hill, 339.)

CRANE, J. The Supreme Court and the Surrogate's Court of Westchester county have made conflicting orders as to the custody of an infant child.

William Crossman Mills was born March 11th, 1904,
the child of William Mills, Jr., and Georgia Crossman
Mills, his wife.  The mother obtained a divorce on May
29th, 1911, in the Supreme Court of the state of New
York, and thereafter, and until the time of her death,
lived with her child in the Lee family.  On April 27th,
1913, she married Thomas Frederick Lee and they lived
together as man and wife until her death on May 2d,
1915.  By her will, admitted to probate in Westchester
county, she named her husband, Thomas Frederick Lee,
and his mother, Emma Kenyon Lee, guardians of the
person and estate of her son, William Crossman Mills
(Lee).  The boy was known as William Crossman Lee,
his name having been changed by order of the County
Court.

Upon application to the surrogate letters of guardian-
ship were issued to Thomas Frederick Lee and Emma
Kenyon Lee on May 18th, 1915, but no notice was given
to the divorced father, William Mills, Jr., or to the grand-
parents, as required by section 2647 of the Code of Civil
Procedure.  The next day, May 19th, 1915, the father,
William Mills, Jr., presented a petition to the Supreme
Court, and obtained a writ of habeas corpus demanding
that the custody of the child be taken from the Lees and
given to him.  Hearings were had before the Special
Term on the return of the writ during July and August
of 1915, and much testimony taken, which resulted in an
order on the 15th day of September, 1915, denying the
application of the said William Mills, Jr., for the custody
of William Crossman Lee, sometimes known as William
Mills, 3d, and awarding costs to the Lees.  The judge,
in his opinion, stated: "I am convinced that the highest
welfare of the boy himself, which is the paramount con-
sideration in a proceeding of this character,- requires that
he should remain in the custody and home of Mrs. Lee
and that the petition of the relator should be denied."
The Lees, thus being awarded the custody of the boy,

applied to the surrogate on September 28th, 1915, for a
confirmation of the order theretofore made, appointing
them general guardians of his person and property, this
time giving notice to the father, William Mills, Jr.
They evidently desired to be appointed guardians of the
property as well as to have the custody of the child. At
the same time there was a proceeding instituted by the
petition of Sarah T. Mills (the grandmother) praying for
the revocation of the letters of guardianship to the Lees.
The two proceedings were consolidated, the only two con-
testants being the Lees (mother and son) and William
Mills, Jr., both of whom appeared by counsel. The sur-
rogate took a voluminous amount of testimony upon the
qualifications of the respective parties to be appointed
guardians, and on the 19th day of June, 1916, revoked
the Lees' letters and appointed a lawyer and a stranger to
the proceeding, De Witt H. Lyon, guardian of the person
and of the property of said William Crossman Lee. In
an opinion rendered by the surrogate he stated: " It seems
to me that the child should not be compelled to live with
his father (Mills, Jr.) unless he so desires. He does express
a desire to live with Emma Kenyon Lee. I would sug-
gest to the new guardian that if Mrs. Lee can provide a
suitable home for the boy, that she have the care of him
until he reaches a mature age when he may decide for
himself with whom he wishes to live."

De Witt H. Lyon, the guardian thus appointed, with-
out application to the Supreme Court for any modification
of its order as to the custody of the child, seized the boy
upon the streets of White Plains on July 14th, 1916, and
has ever since retained custody of him. Whether or not
the guardian took the boy by force, as is alleged, is imma-
terial; possession was not acquired with the consent of the
Lees.

Upon application to the Supreme Court this proceeding
was commenced by the Lees on July 18th, 1916, to
recover from said Lyon, by means of a writ of habeas

corpus, the custody of the child. The petition set forth in substance the above facts. The return alleged that the respondent was guardian of the person of William Crossman Lee, appointed, as above set forth, by the surrogate. It further alleged that the Lees were improper persons to have the custody of the child, stating facts which might warrant such a conclusion. A traverse to the return having been entered, the Special Term sustained the writ upon the papers — petition, return and traverse — without taking any evidence, and directed De Witt H. Lyon to return William Crossman Lee to the relators, upon the ground apparently that the surrogate's proceedings did not supersede the previous order of the Supreme Court, entered September 15th, 1915.

The Special Term should have taken evidence upon the issues of fact presented by the return and the traverse thereto as to the treatment of the boy by the Lees and their fitness to have his custody. Other facts were alleged than those testified to on the previous hearing. (Code Civ. Pro. §§ 2031, 2039.)

The Appellate Division, upon appeal of De Witt H. Lyon, the general guardian, did not send the matter back to the Special Term for a hearing upon the facts, but reversed the Special Term order and dismissed the writ. The appellate court was of the opinion that the Special Term had not awarded custody to the Lees, but had merely dismissed the father's writ. True, this is what the order stated, but the effect and purport of the order was the same as if it had stated in full that custody was given to the Lees. Over three hundred and fifty pages of testimony were taken by the Special Term on the five-day hearing. Seventeen witnesses were examined for the relator and twenty-three for the respondent. Lengthy testimony was given by the boy himself on direct and cross-examination, and the judge wrote an opinion, extracts of which are given above showing that he was investigating the child's welfare. The opinion

and the record may be considered to ascertain what was decided. (*Reliance Marine Ins. Co.* v. *Herbert*, 87 Hun, 285; *Converse* v. *Sickles*, 146 N. Y. 200, 207; *Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137.) Furthermore, it was the duty of the court in a proceeding involving the custody of the child to look solely to his welfare and to decide accordingly. (*People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238, 241; *People ex rel. Elder* v. *Elder*, 98 App. Div. 244, 246; *Matter of Knowack*, 158 N. Y. 482, 491; *Ullman* v. *Ullman*, 151 App. Div. 419.) We must assume that the court performed this duty upon the evidence submitted.

The case of *People ex rel. Keator* v. *Moss* (6 App. Div. 414) is not in point, as in that case the prior writ had been issued three years before and the new writ was issued on facts happening since that time. Here the parties passed from the Supreme Court to the Surrogate's Court within two weeks of the Supreme Court order.

A decision on habeas corpus as to the custody of an infant may constitute *res adjudicata.* (*Matter of Price*, 12 Hun, 508, 511; *Matter of Quinn*, 2 App. Div. 103, 104; *People ex rel. Lawrence* v. *Brady*, 56 N. Y. 182.)

The situation presented is this: The Supreme Court, after a full hearing, awarded the custody of the child to Mrs. Lee. Thereupon, application being made for letters of guardianship of the property as well as of the person of the child, the surrogate, *with the same parties contesting before him*, appointed a stranger. It is now claimed that the action of the surrogate as to the *custody* of the child superseded the action of the Supreme Court and that the guardian appointed by the surrogate had absolute right to the person of the child and could take it in spite of the Supreme Court order.

There is no question but that the surrogate had power to appoint a general guardian of the person and property of William Crossman Lee, and that De Witt H. Lyon was properly appointed, but before he could take posses-

sion of the person of the infant he should have applied to the Supreme Court for an order directing Mrs. Lee to deliver the boy to him.

Guardianship of the person does not always, under all conditions, give absolute right to the custody of the person. The Supreme Court, as the guardian of all infants, has inherent power, in a proper case, to take the custody of the child, even from its general guardian. (*Wilcox* v. *Wilcox*, 14 N. Y. 575; *Matter of Knowack*, 158 N. Y. 482, 490; *Matter of White*, 40 App. Div. 165, 168; *Losey* v. *Stanley*, 147 N. Y. 560.)   The right of the general guardian is the same as that of the father, and must submit to the same regulation and control. (*Matter of Welch*, 74 N. Y. 299; *People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238; *People ex rel. Johnson* v. *Erbert*, 17 Abb. Pr. 395; *Matter of Wentz*, 9 Misc. Rep. 240; *Jenkins* v. *Clark*, 71 Iowa, 552.)

The Supreme Court and the Surrogate's Court have concurrent jurisdiction in many respects, and the seemly administration of the law demands that their orders do not conflict. (*Garlock* v. *Vandevort*, 128 N. Y. 374; *Schuehle* v. *Reiman*, 86 N. Y. 270; *Sloan* v. *Beard*, 125 App. Div. 625; *Platt* v. *N. Y. & Sea Beach Ry. Co.*, 170 N. Y. 451, 458; *Silver & Co.* v. *Waterman*, 127 App. Div. 339; *Mugler* v. *Castleton Hotel & Realty Co.*, 168 App. Div. 492.)

We, therefore, hold that while the surrogate had full jurisdiction to appoint De Witt H. Lyon general guardian of the person and property of William Crossman Lee, yet the guardian should not have taken the boy out of the possession of the Lees, which was the possession of the Supreme Court, without application to that court. We by no means intimate that the decision of the surrogate upon this matter was incorrect or that the Lees are fit persons to have the custody of the boy. We go no further than to rule upon a point of conflicting procedure in order that such difficulties may not arise again,

# 540    MATTER OF MULFORD v. PETTIT & SONS.

Upon the return of the writ in this case all the parties were before the Special Term, and, if that court had taken testimony upon the issues of fact presented, there might not have been any conflict.

The order of the Appellate Division dismissing the writ should be reversed, and the proceedings remitted to the Special Term for a hearing upon the facts.

HOGAN, POUND, MCLAUGHLIN and ANDREWS, JJ., concur; HISCOCK, Ch. J., and CHASE, J., dissent.

Order reversed, etc.