In the Matter of the Application of JOSEPH K. BISTANY and KATHERINE BISTANY, His Wife, for the Adoption of ELLEN MATEJKA, Called in the Petition ELLEN MATEYKA.

County Court, Erie County, October, 1923.

**Adoption — abandonment by parents — consent of parents unnecessary — meaning of " abandoned."**

An adoption under the statute (Dom. Rel. Law, §§ 110–118) cannot take place without the consent of the parents unless they have forfeited their natural rights to the custody of the child in circumstances clearly defined by the statute, one of which is an abandonment of the child by its parents.

The term " abandoned " as used in the statute means neglect and refusal to perform the natural and legal obligations of care and support.

Where the adoption of a girl now about six years of age is sought upon the theory that her parents had abandoned her and thereby forfeited their natural right to her custody, and it is undisputed that until her father saw the child in court upon the hearing hereon he had not seen her since he voluntarily gave her to his sister-in-law to take to the petitioners, three and one-half years before; that the mother had not seen the child since December, 1920, and no effort was made to regain custody of her until May or June, 1923, and in the meantime they never wrote to petitioners about the child, never showed any interest in her welfare and never contributed anything for her support and maintenance, and no excuse is offered for their conduct except that the mother had in the meantime borne two other children, the petitioners have clearly made out a case of abandonment under section 111 of the Domestic Relations Law and the court is warranted in approving the agreement of adoption without the consent of the parents of the child.

It appearing upon the facts that it is for the best interests and welfare of the child to allow her adoption by the petitioners, an order to that effect in which her last name shall be correctly spelled may be entered and all papers and proceedings amended accordingly.

ADOPTION proceedings.

*Clark H. Timerman* and *William Brennan, Jr.,* for petitioners.

*Penney, Killeen & Nye (James C. Sweeney,* of counsel), for parents, opposing.

NOONAN, J.   The petitioners are seeking to adopt Ellen Matejka, an infant, born November 23, 1917, pursuant to the provisions of the Domestic Relations Law (§§ 110–118) upon the theory that she was abandoned by her parents, Joseph and Susan Matejka, who thereby forfeited their natural right to her custody.

Adoption was unknown to the common law of England, and exists in this country only by virtue of the statutes. *Matter of Thorne,* 155 N. Y. 140, 143; *Matter of Livingston,* 151 App. Div. 1; *United States Trust Co.* v. *Hoyt,* 150 id. 621.

An adoption under the statute cannot take place without the consent of the parents unless such parents have forfeited their natural rights to the custody of the child under circumstances clearly defined by the statute, *one of which is an abandonment of the child by the parents. Matter of Livingston, supra; Matter of Johnston,* 76 Misc. Rep. 374; *Matter of Hayford,* 109 id. 479.

Although the statute (§ 111) does not require that notice be given the parents who have abandoned a child, the courts have held (*People ex rel. Lentino* v. *Feser,* 195 App. Div. 90) that such parents should receive notice of the proceedings in order that they may be bound by an adjudication that they have abandoned the child.   Such notice was given herein and they have both appeared in person, and by able counsel, to oppose the granting of an order of adoption.

Abandonment is the relinquishment or surrender of rights or property by one person to another.   Bouvier L. Dict.   The term " abandonment " means neglect and refusal to perform the natural and legal obligations of care and support.   If a parent withholds his presence, his love, his care, the opportunity to display filial affection, and neglects to lend support and maintenance, such person relinquishes all parental claim, and abandons the child. *Matter of Hayford, supra; Matter of Larson,* 31 Hun, 539.

In arriving at a decision herein the court will discuss two questions: Have the petitioners made out a sufficiently clear case of abandonment under the statute?   Is it for the best interest and welfare of Ellen Matejka to allow the adoption?

There is no substantial dispute about the outstanding facts. Where there is any, it will be noted.   The parties are not strangers. The mother and her sisters, Mary and Anna Feriancik, were all employed, at various times, by Mrs. Bistany, and all were regarded as friends as well as employees, and Mary Feriancik has for many

County Court, Erie County, October, 1923.          [Vol. 121

years been the trusted housekeeper for Mrs. Bistany, enjoying in a high degree her respect and confidence.

The Matejkas for the past four years have lived at 415 East Seventy-first street, New York, N. Y., in a first floor apartment consisting of a store in front and two bedrooms, a dining room, a kitchen and bathroom in the rear. In March, 1920, when Mary Feriancik came to visit her, Mrs. Matejka was running a grocery business in the store in front, and had hired a woman to do her house work and care for the family, the largest portion of her time and attention being given to the store. The family then consisted of two sons of Mr. Matejka by a former marriage, Ellen Matejka and a baby brother a few months old. Ellen had the measles in the latter part of 1919, and in March, 1920, was in an emaciated and " run down " condition.

It is claimed by the petitioners that soon after Mary Feriancik arrived for the visit, which lasted three weeks, Mr. Matejka proposed to give Ellen to the Bistanys permanently. That at first Mary Feriancik refused to consider the offer because she had been instructed by the Bistanys, who had recently lost a child of their own, not to bring Ellen back to them. After various conversations, in which reasons are claimed to have been given for his wish to send the child to the Bistanys, the father gave the child to Mary Feriancik to be taken to the Bistanys, and the mother, who had no part in these conversations, went with the child and her sister to the railroad station. There is no substantial difference in the stories of the parties, *except* that the father denies giving the reasons Mary Feriancik claims he gave for surrendering the child, and both parents deny that it was intended to give up the child permanently, and assert that she was to be taken by the Bistanys for a short time only until she recovered her normal health.

In November, 1920, Mrs. Matejka, after being confined to her home for some time by an attack of rheumatism, came to visit the Bistanys to rest and regain her strength. She found that, in her new surroundings, Ellen had forgotten her own mother, and there is nothing to show that Mrs. Matejka, during this visit, gave anything more than perfunctory attention to her child, and there is some testimony to the effect that Mrs. Matejka thought that the child had grown somewhat snobbish in her new surroundings. There is also the undisputed evidence that, during this visit, the Bistanys brought up the question of Ellen returning with her mother, and urged that she be taken then, if at all, and Mrs. Matejka did not take Ellen home with her. The Bistanys claim Mrs. Matejka agreed to send on adoption papers after her return to New York, but she denies this; however it appears from the

undisputed testimony that until the father saw his child in court, he had not seen her since he voluntarily gave her to his sister-in-law to take to the petitioners three and one-half years before; that the mother had not seen her since December, 1920, and they never tried to regain custody of their child until May or June, 1923. During this time they never wrote the Bistanys about her, never showed any interest in her welfare, and never contributed anything for her support and maintenance, although the father has been steadily employed at thirty dollars to sixty-five dollars per week and the mother has been running a grocery store a part of the time, and they have always lived in the apartment to which they now wish to take Ellen. They offer no excuse for their conduct except that Mrs. Matejka in the meantime has borne two other children.

I think the evidence clearly requires a decision that there has been such an abandonment of Ellen Matejka by her natural parents as is contemplated by a fair construction of section 111 of the Domestic Relations Law, and that the court is warranted in approving the agreement of adoption without the consent of the parents. If this conclusion seems harsh and subversive of the natural rights of the parents, it must be borne in mind that the situation in which they find themselves is entirely of their own making; that they have, by their own voluntary conduct, permitted their own child to forget them and to become deeply attached to others and others to her, and that by lapse of time the petitioners and the child have been placed in a position where they are entitled to much consideration. Furthermore, I believe my position is sustained by the decision of the courts in this state and elsewhere.

In *People ex rel. Lentino* v. *Feser, supra,* the mother, after giving her consent in writing to have her daughter live with, and be brought up by, the Fesers, sought to have the adoption set aside, and the court, in a comprehensive opinion by Justice Laughlin, refused to do so, and held that there had been an abandonment of the child by the mother before the adoption. There is nothing new or revolutionary in this doctrine. In 1884, in *Matter of Larson, supra,* the court held that the mother had abandoned and neglected to provide for her child, and that the society having control of it could have it adopted without her consent. This case was followed in *Matter of Hayford, supra;* and a recent case (*Matter of Wainman* v. *Richardson,* 119 Misc. Rep. 363) denied a father the custody of his daughter because her welfare would be better served by leaving her with her maternal aunt.

New Jersey and Wisconsin have identical statutes as to giving notice to the parents and as to abandonment, and the decisions in those states are in accord with the *Hayford* case.

In *Winans* v. *Luppie*, 47 N. J. Eq. 302, it was said: "The statutory notion of abandonment does not necessarily * * * imply that the parent has deserted the child, or even ceased to feel any concern for its interests. It fairly may * * * import any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child;" and a more extreme case (*Wood* v. *Wood*, 77 N. J. Eq. 593) held that there need be no actual running away or abandonment; that it was sufficient if there had been a course of conduct on the part of the father and mother which would indicate there was a settled intention to forego parental rights and leave the child permanently in the care of others.

In the Wisconsin case (*Parsons* v. *Parsons*, 101 Wis. 76) the court said: "The term 'abandon' obviously means no more than neglect or refusal to perform the natural and legal obligations of care and support which parents owe to their children."

Having concluded that there has been such an abandonment by the parents that the court has the right to approve the adoption without their consent, the question of whether the allowance of the adoption is for the best interest of the child will be considered. Upon this point the law seems perfectly clear. It is "the duty of the court in a proceeding involving the custody of the child to look solely to his welfare and to decide accordingly." *Matter of Lee*, 220 N. Y. 532, 538; *Matter of Wainman* v. *Richardson, supra; People ex rel. Pruyne* v. *Walts*, 122 N. Y. 238, 241; *People ex rel. Elder* v. *Elder*, 98 App. Div. 244, 246; *Matter of Knowack*, 158 N. Y. 482, 491; *Ullman* v. *Ullman*, 151 App. Div. 419.

There is no substantial dispute as to the controlling facts. The petitioners and parents are concededly respectable people and fit to have the custody of the child. The petitioners own a comfortable and commodious home, with about three acres of land, in a highly respectable country locality near Buffalo. Mr. Bistany has an annual income of $5,000 from a profitable rug business, with excess profits that are left in the business, which is of a permanent character. They are deeply attached to the child, and Mrs. Bistany has given her all the care and attention that a loving and conscientious mother could give. The child is well and happy in her present surroundings, has forgotten completely her natural parents, and, of course, no longer has any affection for them but loves the Bistanys as if she were their own child.

The parents live in the home hereinbefore described, in a respectable section of New York city, which is populated largely by people of foreign birth or descent, who speak the English language only to a limited extent. There are five children now

with them in an apartment that has only two bedrooms. The opportunities for play and recreation are the limited ones of a great city with its noise and confusion, and the maximum income at the present wages of the father is $3,380 yearly for a family of seven, if he is steadily employed and keeps in good health.

Upon the foregoing facts, it is clearly for the best interests of Ellen Matejka to allow her adoption by the petitioners (*Matter of Wainman* v. *Richardson, supra*), and an order to that effect may be entered.

As it appears that the last name of the infant was erroneously spelled " Mateyka " in the petition, the order may also provide that all the papers in the proceedings be considered amended so that the name will be correctly spelled " Matejka."

Ordered accordingly.