the person who received the wounds was the same person whose body the undertaker had buried, the court also refused to disturb the verdict. People v. Lagroppo, 90 App. Div. 219, 86 N. Y. Supp. 116, affirmed 179 N. Y. 126, 71 N. E. 737.

In all of these cases the courts not only point out that the objection comes too late, but also declare that the appellant himself assumed the existence of the fact upon the trial, and hence cannot repudiate what he himself assumed. No substantial error was committed by the magistrate whereby the rights of the appellant were prejudiced, and the judgment of conviction must be affirmed.

Judgment affirmed.

---

### In re CONNOLLY'S ESTATE.

(Surrogate's Court, New York County. December 8, 1914.)

GUARDIAN AND WARD (§ 58*)—CHILD'S ESTATE—PARENT'S BURIAL EXPENSES.

　　Where the general guardian of an infant child paid the burial expenses of its mother to save her from a pauper's grave, equity, in consideration of the child's legal and moral obligations, will allow the payment of such amount.

　　[Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 264–282; Dec. Dig. § 58.*]

In the matter of the estate of Mary A. Connolly, deceased. On objection to a payment made by a child's general guardian. Objection overruled.

John Patrick Walsh, of New York City, for petitioner.

Leonidas Dennis, of New York City, for United States Fidelity & Guaranty Co.

Andrew S. Hamersley, of New York City, special guardian.

FOWLER, S. The general guardian of the child paid the burial expenses of the child's mother, $67.50, to save her from a pauper's grave. Objection is made to the payment by the child's special guardian. My first impression was that the objection must be sustained, but on reflection I was not so clear, and I have re-examined the point for myself, not having been helped by reference to any authority or principle on the argument. It seemed to me that it would be a scandal in the law if a child with an estate was not morally obligated under the circumstances.

I find that Judge Reeve, as I supposed, in his excellent old book on "Domestic Relations," now a classic in our country, states generally that it is the duty of children who are able so to do to support indigent parents. He places the liability, however, on the basis of the statute of 43 Elizabeth, generally re-enacted in America. I find that St. 43 Eliz. was expressly re-enacted in New York with enlargements (1 K. & R. 566, § 21; 1 R. S. 1813, p. 286, § 21; 1 R. S. [1st Ed.] p. 614, pt. 1, c. 20, tit. 1, § 1), similar to the Connecticut law, which seems to have been founded on a most excellent equity. The statute, tucked away in a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

composite section of a later act, appears, I fear inadvertently, to have been repealed and not re-enacted. Chapter 593, Laws 1886; Consolidated Laws, Table of Laws Repealed. But does it make any real difference in this case whether the liability of an infant is recognized in law or only in equity? It is a recognized principle of equity that the Chancellor or the Master of the Rolls would make some allowance out of an infant's estate where the infant's family was indigent or in poor circumstances. Harvey v. Harvey, 2 P. W. 22; Lanoy v. Duke of Athol, 2 Atk. 447; Petre v. Petre, 3 Atk. 511; Ex parte Petre, 7 Ves. Jr. 403.

Lord Eldon stated, I think, the real principle in Wellesley v. Duke of Beaufort, 2 Russ. 28. I find that Lord Langdale, M. R., made an allowance out of infant's estate for the support of parents, and in Heysham v. Heysham, 1 Cox, 179, an allowance was made out of the infant's estate for the support of the mother. Equity would even allow to an infant a sum to enable him to maintain his father's bastard. Bradshaw v. Bradshaw, 1 J. & W. 627. It certainly was the slenderest of all possible moral obligations that a lawful child should be so bound for his father's obligation. But it was a dictate of kindness, and equity is always kind as well as just.

Thus it is apparent that equity will generally take into consideration, not only the infant's legal obligations, but his moral obligations as well, to his needy parents. How could it be otherwise in a refined system of jurisprudence in a civilized country? If an infant possessed of an estate is under moral obligations in equity to support his indigent parents, how much more, then, would it seem that he is under obligations to give to them the last of all earthly offices and obligations, a decent burial. If the infant is under such moral obligation, is the guardian, who is only the person sui juris of the infant, under opposed and different obligations? I doubt it. In any event I should be ashamed in this instance to sustain the objection to the payment of the trifling burial expense of the infant's mother out of her child's estate.

The objection will be overruled.