In the Matter of the Estate of GLORIA LAURA MORGAN VANDERBILT, Infant.

Surrogate's Court, New York County, December 15, 1934.

# ERRATUM

In *Matter of Vanderbilt* (153 Misc. 885) the word " person " should be substituted for " property " in sixth line of second paragraph of opinion.

*Nathan Burkan,* for Gloria Morgan Vanderbilt, petitioner.

*Frank L. Crocker* and *John Godfrey Saxe,* for the respondent Gertrude Vanderbilt Whitney.

*Cadwalader, Wickersham & Taft,* for George W. Wickersham and another, as general guardians.

*Dunnington, Gregg & Church,* for the respondent Laura K. Morgan.

FOLEY, S. Gloria Morgan Vanderbilt, in June of this year, petitioned this court to be appointed the guardian of the person of her daughter, Gloria Laura Morgan Vanderbilt, and to be appointed general guardian of her property. At the time of the inception of the proceeding there were two coguardians of the property — George W. Wickersham, former Attorney-General of the United States, and Thomas B. Gilchrist, his law partner. A guardian of the person of the infant had never been appointed. Mr. Wickersham had functioned under appointment of this court from the time of the acquisition of the infant's property in 1925. He was appointed on the request of Mrs. Vanderbilt, the mother. Mr. Gilchrist was appointed as coguardian upon the petition of Mrs. Vanderbilt, by decree of the Surrogate's Court dated December 27, 1933.

The form of the pending proceeding may be divided into two separate branches, (1) the guardianship of the person of the child; (2) the guardianship of her property. Certain developments since the original return of the citation in this proceeding require that the branch of the proceeding relating to the guardianship of the property should be terminated in the Surrogate's Court and the supervision, custody and guardianship of the person of the infant remain with and be continued by the Supreme Court.

That part of the proceeding affecting the guardianship of the property will be retained by the Surrogate's Court and jurisdiction of the property of the infant will be continued.

Pursuant to the traditional policy of this court to adjust, wherever possible, family disputes, and shortly after the return of the citation, the surrogate called a conference of counsel of the respective parties in order to reach an amicable settlement of all the issues in the proceeding. An adjustment of the differences was reached in the month of August, which was acceptable to all the parties involved. There remained only the drafting of a decree, simple in form, to be submitted to the surrogate for signature. For some unknown reason, or because of some disagreement, the nature of which was never disclosed to the surrogate, the decree of compro-

mise was not submitted. Had this settlement been completed, unwholesome and salacious notoriety, with its inevitable injury to the child, would have been avoided.

In September, 1934, Mrs. Vanderbilt sued out a writ of habeas corpus in the Supreme Court, New York county, which was designed to obtain the custody of her daughter from Mrs. Whitney, the paternal aunt. A trial of the issues before Mr. Justice CAREW ensued. Disposition of the application in the Surrogate's Court was suspended pending the trial and the final decision of the issues in the Supreme Court. A certified copy of the final order in that proceeding has been filed in the present proceeding before me. In it directions for the custody of the infant have been made. A provision which permits continued judicial supervision and control of the custody of the child by subsequent direction of the court is embodied in the final order of the Supreme Court. The form of the order and its finality have been recently approved by the Appellate Division (*Matter of Vanderbilt*, 242 App. Div. 482).

The Court of Appeals in *Matter of Lee* (220 N. Y. 532), in an opinion by Judge CRANE, dealt with a similar situation where proceedings for the appointment of a guardian of the person of an infant were instituted in the Surrogate's Court and an independent proceeding brought on by writ of habeas corpus had been tried and determined in the Supreme Court which involved the custody of the infant. The Court of Appeals laid down clear and explicit instructions " upon a point of conflicting procedure in order that such difficulties may not arise again." These rules may be summarized as follows:

(1) " The Supreme Court and the Surrogate's Court have concurrent jurisdiction in many respects, and the seemly administration of the law demands that their orders do not conflict." (Citing *Garlock* v. *Vandevort*, 128 N. Y. 374; *Schuehle* v. *Reiman*, 86 id. 270; *Sloan* v. *Beard*, 125 App. Div. 625; *Platt* v. *N. Y. & Sea Beach Ry. Co.*, 170 N. Y. 451, 458; *Silver & Co.* v. *Waterman*, 127 App. Div. 339; *Mugler* v. *Castleton Hotel & Realty Co.*, 168 id. 492.)

(2) The surrogate has full jurisdiction to appoint the general guardian of the person and the general guardian of the property of an infant.

(3) " The Supreme Court, as the guardian of all infants, has inherent power in a proper case, to take the custody of the child even from its general guardian."

To these may be added a fourth rule which has been repeatedly followed by the courts, that where the Surrogate's Court has assumed full and complete jurisdiction and has power and authority under the law to dispose of every necessary phase of the applica-

tion, such jurisdiction should be maintained and attempts by parties to invoke the jurisdiction of the Supreme Court over the same subject-matter will be denied. (*Matter of Raymond* v. *Davis*, opinion by CARDOZO, Ch. J., 248 N. Y. 67, 72; *Chipman* v. *Montgomery*, 63 id. 221, 236; *Anderson* v. *Anderson*, 112 id. 104, 115; *Sanders* v. *Soutter*, 126 id. 193, 200; *Matter of Farmers' Loan & Trust Co.*, 123 Misc. 600.) In *Rutherfurd* v. *Myers* (50 App. Div. 298) an attempt by the Supreme Court to stay a proceeding in the Surrogate's Court where the surrogate had the same jurisdiction as the Supreme Court was reversed by the Appellate Division, First Department.

In the pending proceeding, therefore, the two phases of the application will be separated. That part of the application whereby Mrs. Vanderbilt seeks to secure her appointment as coguardian of the property will be continued in this court. The notices of appearance of Mrs. Whitney and Mrs. Morgan, the mother of Mrs. Vanderbilt, will be stricken out and they and their attorneys and counsel are relieved from any further participation in the proceeding in this court. At the very inception of this proceeding, Mrs. Whitney, through her attorney, disclaimed any interest in the management of the property of the infant or any interest in allowance of money for the support of the infant. Her only interest was stated to be in the appointment of the guardian of the person or her custody. Mrs. Morgan, through her attorney, has likewise disaffirmed any interest in the property of the child.

The jurisdiction of the Surrogate's Court over the person of an infant is limited to the appointment of a guardian of the person. The Supreme Court has a wider jurisdiction, not only to appoint the guardian of the person, but also to enforce production of the infant before it by a writ of habeas corpus and to decree the placement of the child in proper custody with persons designated by it. (*People ex rel. McCanliss* v. *McCanliss*, 255 N. Y. 456.) Mrs. Vanderbilt resorted to the jurisdiction of the Supreme Court to secure possession of her child. It was her legal privilege to do so. Having chosen that forum, she is bound by its orders and its continued exercise of jurisdiction over the custody of her daughter. Although under the authority of the Court of Appeals in *Matter of Lee* (*supra*), I have the power to appoint a guardian of the person, I have decided, in view of the comprehensive determination of the Supreme Court in the habeas corpus proceeding, that no guardian of the person should be appointed in the Surrogate's Court. The terms of the order of the Supreme Court are so broad and definite and complete respecting the continued custody of the child, that the appointment of a guardian of the person is entirely unnecessary.

The application for the appointment of the guardian of the person is, therefore, denied.

Concerning the guardianship of the property a different disposition will be made. Certain principles of law and certain facts which justify the continued control of the infant's property and the retention of jurisdiction over the guardians of the property by the Surrogate's Court should be stated. The jurisdiction of the Surrogate's Court over the guardianship of and the property of infants is as broad and comprehensive as that of the Supreme Court. The surrogate possesses, just as the Supreme Court has possessed, all the powers of the former Court of Chancery. (Surr. Ct. Act, § 173.) Section 173 of the Surrogate's Court Act reads in part as follows: " The surrogate's court has the like power and authority to appoint a general guardian of the person or of the property, or both, of an infant, and like power and authority over property of an infant, which the chancellor had, on the thirty-first day of December, eighteen hundred and forty-six. * * * Such power and authority must be exercised in like manner as they were exercised by the court of chancery, subject to the provisions of this act." In the habeas corpus proceeding in the Supreme Court, no application for the appointment of a guardian of the property of the infant was made or was involved. It was stated in the opinion of the Appellate Division in *Matter of Vanderbilt* (242 App. Div. 482), that the " court determined the sole issue, which was the custody of the child." The cases appear to hold that there is a lack of jurisdiction in a habeas corpus proceeding to go beyond the question of custody and to trespass into the control of the child's property or the enforcement of the support of the infant by either party to the writ. (*People ex rel. Klee* v. *Klee*, 202 App. Div. 592; *People ex rel. Prior* v. *Prior*, 112 Misc. 208, LAZANSKY, J.) Neither Mrs. Vanderbilt nor Mrs. Whitney sought control over the property of the infant in that proceeding. In the ordinary case, if there had been no guardian of the property, the Supreme Court would have had complete jurisdiction to appoint one. That situation is not here, because the Supreme Court has never .exercised any control over the infant's property. Only in the Surrogate's Court has application for the appointment of guardians of the property been made. " Where both tribunals have equal jurisdiction, the case should be retained and disposed of in the forum where judicial action was first sought." (*Ludwig* v. *Bungart*, 48 App. Div. 613, 616.)

For the past nine years the property of the infant has been administered under the supervision of the Surrogate's Court by guardians appointed by it. Annual allowances have been made,

by appropriate orders, for the maintenance and support of the infant. The annual accounts of the guardians have been filed in and scrutinized by the Surrogate's Court. Certain litigation arising out of the infant's property has been brought on and determined by the surrogate, particularly the right of the guardian to take out insurance upon the life of the mother of the infant. That application, made in the year 1927, was denied upon the ground that payment of premiums on such insurance would constitute an unlawful investment of the infant's money. (*Matter of Vanderbilt*, 129 Misc. 605.) My decision was affirmed by the Appellate Division. (*Matter of Vanderbilt*, 220 App. Div. 830.) There is pending in this court an accounting proceeding in the estate of Cornelius Vanderbilt, the paternal grandfather of the child. The latter's widow died recently having exercised a power of appointment by will whereby the infant will receive the sum of approximately $750,000 from the estate of her grandfather. Necessarily, the supervision of this accounting proceeding and the distribution of the estate will result in enhancement of the infant's estate. Prior litigation involving the estate of the grandfather and the protection of the infant's rights in it was determined by me in *Matter of Vanderbilt* (134 Misc. 574) and affirmed by the Appellate Division (229 App. Div. 574).

It must be assumed that the Supreme Court in compliance with the instructions of the Court of Appeals in *Matter of Lee* (*supra*), and for reasons of comity and a desire to avoid conflict with the orders of the Surrogate's Court, will make no order or decree affecting the property of the child. The custody of the child for certain periods under the Supreme Court order has been given to her mother, Mrs. Vanderbilt. The control of her conduct and the care of the infant can undoubtedly be enforced under the wide jurisdiction of the Supreme Court. The control of the infant's property is unnecessary to effectuate protection of the infant's custody. It would be unseemly to hold over the head of the mother a threat of a reduction of her allowance for her own support or the support of the infant out of the latter's funds. It would also be improper to hold out to the mother the unlawful premium for good conduct of an increased allowance payable out of the child's property, in excess of the reasonable cost of the maintenance of the child or of the mother. It is the practice of the courts, under legal and equitable authority, to make reasonable allowances for the support, maintenance and education of an infant. Such allowances are based upon the cost of maintaining the infant in proper circumstances. Established rules of law and equity also permit a reasonable allowance to be made out of the infant's property for

the support of the infant's mother if the latter be without other means of livelihood. (*Matter of Connolly*, 88 Misc. 405, ROBERT LUDLOW FOWLER, S.) Since the Surrogate's Court has appointed the guardians of the property, their duties should be supervised and the expenditure of the funds controlled exclusively by the orders of this court, particularly in this case because of the long familiarity of the court with the supervision of the infant's funds. A divided control or a system of conflicting orders made in two courts would inevitably tend to confusion, friction and to possible waste of the infant's property. Unity of control in a single court is conducive to the orderly administration of justice.

Mr. Wickersham and Mr. Gilchrist filed on November 23, 1934, an answer to the petition of Mrs. Vanderbilt for appointment as guardian of the property. Under the customary practice of this court where an answer is filed, a date for hearing is set. The hearing in this proceeding will be had upon the 3d day of January, 1934, at ten-thirty A. M. The issues raised by the petition and answer are relatively simple. They are as follows: Whether a third coguardian of the property should be appointed to conserve and protect the property of the infant? If so, whether Mrs. Vanderbilt is a fit and competent person to be appointed? If testimony is necessary, it will be limited strictly to these issues. No evidence of the moral character or lack of moral character of the petitioner will be received, since the custody of the infant is not involved in this proceeding. Proceed accordingly.