In the Matter of JOAN MEYERS, Petitioner, against HERBERT W. MEYERS, Respondent.

Domestic Relations Court of City of New York, Family Court, Queens County, October 10, 1938.

*Otto, Easterday & Warburton*, for the petitioner.

*Arthur Kraut*, for the respondent.

*William C. Chanler, Corporation Counsel [Alice E. Trubin of* counsel], *amicus curiæ*.

O'BRIEN, J.  This is one of a type of cases which is becoming more numerous as the litigants go from one forum to another, seeking advantage over each other, and using in their battle legal processes enacted primarily and exclusively to promote justice and equity.  Hence, this court is constrained to demark and outline the respective jurisdictions, that orderly and correct practice may be enforced.

The history of this case is as follows: On February 11, 1935, Joan Meyers, the petitioner, a minor dependent child, began a proceeding in this court against her father alleging that he had refused and neglected to support her and praying this court for an order directing him to provide for her support.

This petition was brought by the infant in her own name under section 111 of the Domestic Relations Court Act, which reads in part as follows: " Notwithstanding the provisions of *any other law,* a wife, child, or poor relative may file with the court a petition that the court order the persons legally chargeable with their support to support said petitioner as required by law.  Such petition shall be under oath and may be  *  *  *  filed on behalf of such wife, child, or poor relative by the parent or guardian of the child."

Thereafter, and on February 19, 1935, the child's father, the respondent herein, in answer to the petition appeared in the Domestic Relations Court and by a formal writing signed by him, acknowledged before the court, he " acknowledged his legal liability " for the support of the infant and offered and consented to pay to the petitioner for her support the sum of five dollars per week.

Upon his consent and agreement pursuant to sections 118 and 128, the court accordingly made an order that the respondent pay to the infant petitioner, his daughter, the sum he agreed to pay. The jurisdiction of this court and its powers to entertain the original petition and to order paid the amount agreed to be paid by the parties are conferred by sections 91 and 92 of the act.

Thereafter and on April 26, 1937, the infant petitioner made an application to this court for an order requiring the respondent to pay for certain necessary medical care, treatment and services. A hearing before this court was had, at which the respondent appeared with counsel, who filed a general notice of appearance on behalf of the respondent.

After the hearing an adjournment was had for the purpose of ascertaining the extent of the income of the respondent. The matter came on again on May 21, 1937, at which time the respondent again appeared and upon the testimony which conclusively established the delicate condition of the child's health, and the adequacy of the respondent's income, the court made an order requiring the respondent to pay toward the medical bill the sum of $250 payable in weekly payments.

These orders were made under jurisdiction conferred on this court by subdivision 2 of section 92 which specifically included the power to provide " shelter, food, clothing, care, medical attention," etc.

On August 25, 1938, the infant petitioner appeared and made complaint that the respondent had failed to comply with the order of this court, and that there was due to her arrears of fifty-seven dollars, and that no payment had been made to her since August eighteenth. She also applied for a modification of the order asking that it be increased to fifteen dollars per week in view of a serious medical history requiring a large outlay.

The Domestic Relations Court Act makes provisions for all of these proceedings. The failure to obey an order for support and the enforcement and punishment for a failure to support is contained in sections 102, 132, 134 and 151 of the act; accordingly a delinquent notice was sent to the respondent.

Thereafter and on September 7, 1938, the case came on to be heard, and on application of the respondent's attorney the case was adjourned to September 14, 1938.

At the request of the petitioner's attorney and in accordance with her right to obtain such information, a copy of the record of the respondent's earnings averaging $72.38 per week was furnished to him by the court and a letter was sent from the court notifying the respondent and his attorney that the case had been accordingly adjourned until September 14, 1938, at their request.

About this time the respondent bethought himself of certain proceedings in the Supreme Court, Queens county, begun some four years before and prior to the beginning and antedating the proceedings brought by the infant petitioner in the Domestic Relations Court.

It appears that on the 1st day of May, 1934, in an undefended action for absolute divorce brought by Ethel M. Meyers, plaintiff, against Herbert W. Meyers, defendant, the mother and father respectively of the infant petitioner herein, a final judgment of absolute divorce against the defendant Meyers was decreed upon the statutory ground and the plaintiff permitted to resume her maiden name of Ethel M. Steele. The care and custody of the child of the parties was awarded by final decree to the mother, there being no application by the plaintiff for alimony and no award of alimony in the decree.

On September 2, 1938, the former wife of the respondent (not the petitioner) was served by Herbert W. Meyers with an order requiring her to show cause on September seventh at Special Term, Queens County Supreme Court, why the decree of final judgment of divorce of May 1, 1934, should not be amended so as to include in an amended judgment matters of visitation and custody of the child (Joan) (the petitioner in this court), and to direct the respondent to pay to his divorced wife the sum of seven dollars and fifty cents per week, excepting during July and August, toward the maintenance and support of the child.

In the affidavit of the respondent attached to the order to show cause was this statement: " The reason why an order to show cause is asked for herein is in order to stay all proceedings before the Domestic Relations Court now set for September 7, 1938, wherein the plaintiff herein is requesting a modification of the order for the support and maintenance of my daughter, Joan."

The petitioner and her attorney appeared in the Domestic Relations Court September 14, 1938, the adjourned date agreed upon. The respondent failed to appear. Accordingly a summons was directed to be served upon the respondent, the father of the infant petitioner, to appear in this court on September twenty-eighth, in accordance with the practice of this court and under sections 127 and 128 of the Domestic Relations Court Act wherein all parties

are summoned from time to time where defaults in payment or where modifications are asked for in continued and pending cases involving orders for support.

On the adjourned date of the hearing in the Domestic Relations Court, the court was informed by the attorney for the infant petitioner that on September 23, 1938, the Special Term, Queens county, handed down a decision granting the defendant husband the right to amend the final decree of divorce dated May 1, 1934, and in substance granting to the husband the custody of the child each Saturday from nine A. M. to six P. M. and the custody of the child for the first three weeks during August of each year and to take the child to whatever place the defendant would spend his vacation and referring the matter to an official referee to " hear and determine the amount of support that should be provided."

The learned Special Term in its opinion (N. Y. L. J. Sept. 23, 1938, p. 803) among other matters stated:

" Plaintiff in her opposing affidavits questions the jurisdiction of this court to adjudicate with respect to the amount to be allowed for the support of the child because she claims that the Domestic Relations Court has acquired jurisdiction.

" The question of superior jurisdiction need not be decided now. Plaintiff herself came into the Supreme Court with this suit in 1934. The action that she initiated had for its object the permanent separation of the parties and the determination of custody of the issue of the marriage as well as the arrangement for the support of the child * * *

" I am confident that the absence of defendant's counsel from the hearing deprived the learned justice from the Domestic Relations Court of hearing that the application before the Supreme Court was to amend its own decree, which decree had been obtained by the plaintiff herein, the petitioner in the Domestic Relations Court. * * * Plaintiff is causing confusion by appearing in two courts seeking the same relief."

It is evident that the learned Special Term has overlooked the fact that the " plaintiff herein " (in the Supreme Court) has never appeared in the Domestic Relations Court. There has never been an appearance by her in the Domestic Relations Court.

Furthermore, neither the relief nor the remedies nor their enforcement nor the jurisdiction in the Domestic Relations Court is similar or identical with those in the Supreme Court. They are only partially concurrent.

There is a vast and wide difference between them for upon the Domestic Relations Court the Legislature has conferred broad, sweeping powers over the child, over its surroundings, over the

personal conduct, the environment, the education, and the supervision of the child, its life, its health, its home, its parents — powers not vested in the Supreme Court; powers conferred by the Legislature in a great vision of social reconstruction in which the child is the central figure.

It is not " the question of superior jurisdiction." The jurisdiction in many respects is wholly different. But since the power of the Supreme Court in matrimonial actions is purely statutory the extent of its power to vary, alter or modify a final decree of divorce is contained in section 1170 of the Civil Practice Act.

Section 1170 of the Civil Practice Act grants in the Supreme Court both before and after final judgment to provide for the custody, care, education and maintenance of any of the children of the marriage in a divorce or separation action " as justice requires."

The effect of the statute is to write a reservation into every final judgment of divorce, and the jurisdiction of the court over the parties and over the incidental subject-matter is prolonged. To that extent the action may be said to be pending. (*Fox* v. *Fox*, 263 N. Y. 68.)

It is obvious that the right to vary final judgment is based wholly upon providing for the necessities of the child, or, indeed, for the support of plaintiff if her circumstances have changed since the final decree.

But the qualifying restriction, " as justice requires," could hardly give to the defendant husband the right to reopen and amend a final judgment in an action in which he neither appeared nor answered and the avowed purpose of which application is by such amendment to direct himself to pay a weekly sum of seven dollars, an amount he had been paying for a period of two years under the order of a court of competent jurisdiction. That this is a requirement of justice sufficient to confer power to modify a final judgment within the intent of the statute, is open to serious challenge.

There is no burden on the plaintiff wife to explain why she chose not to ask for the support of the child in the final decree. But such omission could not deprive the infant petitioner of its legal right in its own name to seek support in the Domestic Relations Court. The defendant husband made no objection to the omission. Indeed, he was not concerned with its omission or its insertion as he made no appearance and offered no defense. He was by his own choice a defaulting party with no interest in the result of the action.

The Domestic Relations Court having obtained jurisdiction of the question of support of the minor child, the Supreme Court is without power and in any event should not deprive it of its powers

and jurisdiction to act in the matter. It has been the policy of the Supreme Court not to deprive a court of concurrent jurisdiction of its powers to act once a proceeding has been initiated in that court.

In *Rutherford* v. *Myers* (50 App. Div. 298) an attempt was made by the Supreme Court to stay a proceeding in the Surrogate's Court where the surrogate had the same jurisdiction as the Supreme Court. The Appellate Division of the First Department reversed this order for a stay. (See, also, *Matter of Vanderbilt*, 153 Misc. 884, at p. 886.) The court stated as follows: " To these may be added a fourth rule which has been repeatedly followed by the courts, that where the Surrogate's Court has assumed full and complete jurisdiction and has power and authority under the law to dispose of every necessary phase of the application such jurisdiction should be maintained and attempts by parties to invoke the jurisdiction of the Supreme Court over the same subject matter will be denied."

In *Matter of Hearn* (158 Misc. 370, at p. 379) the rule to be followed was stated more broadly and reads as follows: " Whereas, therefore, this court would unquestionably have concurrent jurisdiction to determine the issue of whether or not the erection of the purported trust effected a valid transfer of the assets in question from the decedent, had the issue not already been raised, it is primary that where jurisdiction of one of two tribunals of concurrent powers has attached, the other will refuse to pass upon the issues invoved. (*Schuehle* v. *Reiman*, 86 N. Y. 270, 273; *Flatauer* v. *Loser*, 211 id. 15, 20; *Colson* v. *Pelgram*, 259 id. 370, 375; *Matter of Farrell*, 125 App. Div. 702, 704; *Producers Royalty Co., Inc.*, v. *Ottinger*, 129 Misc. 694, 696; *Matter of Preisendorfer*, 118 id. 524.) "

It is essential that each court does not conflict with the other, and as stated in *Matter of Lee* (220 N. Y. 532, at p. 539): " The Supreme Court and the Surrogate's Court have concurrent powers in many respects, and the seemly administration of the law demands that their orders do not conflict."

The petitioner infant had the right to choose the forum wherein she desired to seek aid. (*Matter of Coombs*, 185 App. Div. 312; *Matter of Raymond* v. *Davis*, 248 N. Y. 67.)

This proposition was stated well by Chief Justice CARDOZO in *Matter of Raymond* v. *Davis* (*supra*). It reads as follows: " There remains a question of jurisdiction and procedure. Liquidation may be ordered by a decree of the surrogate as an incident to the allowance or rejection of a claim to share as a creditor in the assets of the estate. Only by such relief can there be complete justice between the parties without oppressive expense and harrowing delay. * * * To remit the claimant to another forum after

all these advances and retreats, these reconnaissances and skirmishes, would be a postponement of justice equivalent to a denial. If anything is due him, he should get it in the forum whose aid he has invoked."

The contention that the petitioner must show that she is likely to become a public charge and failing to do so, prevents consideration of this application, is without substance. Respondent's authority for such contention is section 137 of the Domestic Relations Court Act. This argument only applies in a case where a party has been the plaintiff in a matrimonial action brought in the Supreme Court and now brings a proceeding in the Family Court. It does not apply in the case of a minor child. (*Matter of Zammatara* v. *Zammatara*, 245 App. Div. 710.)

The application by petitioner for a modification is hereby granted and the weekly sum shall be paid at the rate of nine dollars per week beginning with the next payment.