ANNA " KENNEDY," Petitioner, *v.* TIMOTHY " KENNEDY," Respondent.*

Domestic Relations Court of New York, Family Court, Kings County, August 21, 1941.

*Murray M. Brodsky,* for the petitioner.

*Michael C. Sigler,* for the respondent.

SICHER, J.   Petitioner has invoked the jurisdiction both of this court and the Supreme Court of the State of New York.   Such action creates practical complications and raises questions as to the

---

* This opinion as here published substitutes fictitious surnames and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York.

scope of section 137 of the Domestic Relations Court Act of the City of New York.

At the July 14, 1941, hearing before me petitioner testified, and her counsel's written argument assumes, that she seeks from respondent in this court support only for the child Thomas and nothing for herself. But the sole order of this court now in force, on which the instant application is, therefore, necessarily based, was a February 27, 1939, order directing respondent to pay the sum of fourteen dollars on March 10, 1939, and bi-weekly thereafter for the support of that child *and* petitioner. And such order was based on a signed written agreement of the parties to like effect. Moreover, it contemplated that respondent was then employed as a W. P. A. supervisor at a compensation of about $110 for each four weeks' period.

The parties were married on August 6, 1925, and separated in June, 1931. Of their union there is one child (Thomas), born September 26, 1929, now and already on February 27, 1939, living with petitioner and her dependent widowed mother; and petitioner was then, and still is, earning eighteen dollars a week.

On July 5, 1939, Justice DUNHAM indorsed upon the petition that respondent was then still a W. P. A. employee and directed service of a summons returnable July 17, 1939; and on respondent's failure to appear upon the date last mentioned a bench warrant was issued.

At a September 14, 1939, hearing Justice JACKSON fixed the then arrears at fifty-four dollars, directed respondent to pay thirty dollars immediately, fourteen dollars on the next following current order installment due date and the balance of ten dollars on the next following due date.

In February, 1940, petitioner reported to the Arrears Division that she had then not received a payment in over three months; but, although notified to appear on February 15, 1940, neither party attended on that date and accordingly no action was then taken.

The next step in this court was petitioner's appearance with counsel on June 9, 1941, when she stated that respondent had made no payment since November 30, 1939, that she believed he was working and that, although his places of residence and employment were unknown, he could be picked up at a certain bar and grill. Upon those representations, a bench warrant was issued.

Apparently it was not then disclosed that on April 22, 1940, petitioner had commenced in the Supreme Court, Kings County, an action for separation; that the summons and complaint and motion papers asking alimony and counsel fee had been served on respondent; that there had been entered in the Supreme Court on

May 23, 1940, a default order granting plaintiff (petitioner herein) the sum of ten dollars a week as alimony for herself and maintenance for the child and one hundred dollars counsel fee; or that a certified copy of that order was served on respondent on June 28, 1940, but no payments had been made thereunder.

On July 1, 1941, respondent was brought before this court upon such June 9, 1941, warrant and was held in bail; at petitioner's request there were issued subpœnas for Anthony " King," Leo " Kelly " and Marion " Kelly," and at respondent's request counsel was assigned to him by Justice SIEGEL, for he represented that he had no present assets or income and that his only occupation was assisting Mr. and Mrs. " Kelly " as janitors in return for room and board.

On July 3, 1941, both parties appeared with counsel before Justice SIEGEL; the arrears were fixed upon consent at $716; and respondent was paroled in custody of his counsel until July 14, 1941.

Near the conclusion of an extended hearing before me on the last-mentioned date there happened to emerge the above-described facts concerning the separation action in the Supreme Court. And as it was conceded that petitioner still earns eighteen dollars a week, her counsel was asked to submit a brief on the question as to the effect of the pendency of such separation action on the jurisdiction of this court, for, in the light of expressions in *Costa* v. *Costa* (247 App. Div. 192, 193) and *Fiorentino* v. *Fiorentino* (249 id. 561, 562) there is presented a question whether and to what extent this court has jurisdiction to proceed at this time.

In *Costa* v. *Costa* (*supra*) the Appellate Division, First Department, on March 27, 1936, ruled that the fact that the petitioner is likely to become a public charge " constitutes the only basis for the exercise of jurisdiction by the Domestic Relations Court during the pendency in the Supreme Court of an action for a separation between the parties;" and on February 11, 1937, that same court reiterated, in *Fiorentino* v. *Fiorentino* (*supra*), that during the pendency of an action for separation in the Supreme Court a showing that the minor children were likely to become public charges was prerequisite to the Domestic Relations Court's jurisdiction to entertain the wife's petition for an increased allowance to provide for the support of such children.

Underlying such pronouncements is the general principle of avoidance of circuity of actions and of the concentration of proceedings in the court of co-ordinate jurisdiction having broader powers, subject, however, to the practical consideration that a petitioner who is or is likely to become a public charge, being unable to bear the burden of the expense and delays of a plenary suit, needs and

should be allowed the costless and more expeditious procedure of the Domestic Relations Court of the City of New York. However, there has developed a tendency towards resort to this court also when the litigation in the Supreme Court has become unprofitable or too onerous for counsel or an undue strain on the resources of petitioners outside the category of persons likely to become public charges; likewise, to quote recent comment of Justice PANKEN: " Not infrequently both petitioners and respondents avail themselves of the jurisdiction of the Supreme Court and the Domestic Relations Court sometimes to harass a spouse, sometimes to chance it in the hope of obtaining a greater or a lesser award from the one or the other court, and both the Supreme Court and the Domestic Relations Court are sometimes used by one or the other spouse as a means to vent spleen upon the other party to the marital contract." (*Greenzang* v. *Greenzang*, 169 Misc. 516, 520.)

As petitioner earns eighteen dollars a week, neither she nor the child is now or likely to become a public charge. Accordingly, petitioner must be relegated to her remedies in the still pending Supreme Court action, unless the particular facts fall within one of the saving provisions of section 137 of the Domestic Relations Court Act of the City of New York.

That section covers four situations, here considered for convenience in the following sequence rather than in the order in which they are contained in the statute:

(1) " An action for divorce, separation or annulment pending in the Supreme Court shall not prevent the Family Court from entertaining a petition for support if it is shown to the satisfaction of the Family Court that the petitioner is likely to become a public charge." (First part of second sentence of section 137 of the Domestic Relations Court Act of the City of New York.)

This is the provision expressly recognized in *Costa* v. *Costa* (*supra*) and *Fiorentino* v. *Fiorentino* (*supra*) but, as above stated, it is here inapplicable.

(2) " After final adjudication by the Supreme Court denying alimony in a separation action, if in the opinion of the Family Court the circumstances of the parties have changed or it is shown to the satisfaction of the Family Court that the petitioner is likely to become a public charge, the Family Court may entertain a petition for support." (Third sentence of section 137 of the Domestic Relations Court Act of the City of New York.)

This provision too is here inapplicable.

(3) " Nor shall such an action [one for divorce, separation or annulment pending in the Supreme Court] prevent the Family Court from entertaining a petition for support of a child or children

up to the age of seventeen years, in the absence of an order of the Supreme Court in such action providing for such support." (Concluding part of second sentence of section 137 of the Domestic Relations Court Act of the City of New York.)

The matter just quoted was added to section 137 of the Domestic Relations Court Act of the City of New York by section 10 of chapter 671 of the Laws of 1940, which amendment gave statutory confirmation of the rule previously applied in *Zammataro* v. *Zammataro* (245 App. Div. 710) and *Matter of Meyers* v. *Meyers* (169 Misc. 860). *Zammataro* v. *Zammataro* (*supra*) affirmed, without opinion, a December 12, 1934, order of Presiding Justice JOHN WARREN HILL directing respondent to pay sixty dollars a month for the support of a child and denying, on the ground that such application was for the support only of a child, respondent's motion to dismiss the petition because of the pendency of a separation action. Examination of the record on appeal reveals that the separation action had been dormant for five years; that petitioner's application therein for temporary alimony had been made and denied before the birth of the child; and that the petition, although in form one for the wife and child, was on the hearing before Justice HILL stipulated to be deemed limited to the child. Likewise, in *Matter of Meyers* v. *Meyers* (*supra*) the petition was one solely in behalf of a child and an order had been entered on an agreement between the parents for support of the child only.

As above shown, the actual facts herein negative petitioner's counsel's argument that the order now sought to be enforced is one for the child only; moreover, the Supreme Court temporary order provides for support of the child as well as petitioner-wife. So the last-quoted provision of section 137 of the Domestic Relations Court Act of the City of New York is here inapplicable on the two-fold grounds that (1) such provision contemplates a petition solely for support of a child and in that child's behalf; and (2) the absence of an order of the Supreme Court in such action providing for the child's support.

(4) " Where a divorce, separation or annulment has been granted to the petitioner by the Supreme Court or *a suit for such relief is pending and the respondent has been required under the terms of any order or decree entered in such separation, divorce or annulment proceeding to pay a specified sum to the petitioner or her children as alimony or maintenance and has failed to do so*, that fact shall not be a bar to a proceeding in the Family Court to compel support within the limits of the order of the Supreme Court and as set forth by section ninety-two of this act, provided that the respondent is not in jail for failure to obey the order of the Supreme Court."

(First sentence of section 137 of the Domestic Relations Court Act of the City of New York; italics supplied.)

As respondent has wholly defaulted in the performance of the aforementioned May 23, 1940, order of the Supreme Court awarding to petitioner *pendente lite* ten dollars a week " as and for alimony for the support and maintenance of herself and of the issue of the marriage, the infant son," she could now ask for a *new* order of this court within the limits of said Supreme Court order; and petitioner is hereby granted leave to make such an application. However, as a practical matter such application might best be deferred until there can be shown that the respondent is *presently* " possessed of sufficient means or able to earn such means " for payment of a " fair and reasonable " support sum " according to his means." (Dom. Rel. Ct. Act of the City of New York, § 101, subd. 1.) For, not only must an order of this court not exceed the amount of the Supreme Court order but may be less, being necessarily based upon facts existing and proved at the time of the entry of the order in this court rather than as of the date of the Supreme Court order.

Notwithstanding the foregoing factors, the institution of a Supreme Court action does not in any event deprive a petitioner of her right to collect through this court any arrears already accrued under order of this court at the date of the commencement of the Supreme Court action. Such arrears vest in petitioner as they fall due. And the arrears accrued under the February 27, 1939, order of this court are not embraced in the May 23, 1940, order of the Supreme Court, which is prospective only (although it duplicates and indeed exceeds, from and after May 23, 1940, the February 27, 1939, order of this court). The arrears accrued under the last-mentioned order up to April 22, 1940 (the date of the commencement of the Supreme Court action), are less than the July 14, 1941, figure of $730, fixed at the hearing that day on consent, but without mention of the Supreme Court action or consideration of the special facts hereinabove set forth. However, the amount of the arrears as at the date of the commencement of the Supreme Court action is substantial and justifies continuance of the jurisdiction of this court for the purposes hereinafter set forth.

The evidence upon the July 14, 1941, hearing failed to establish that respondent is now possessed of any assets or income. But it indicated that respondent may have potential earning capacity which he should honestly endeavor to capitalize for the support at least of the child.

Naturally embittered by respondent's indifference to his family obligations, petitioner vehemently asserts secretion of assets and

respondent's announced determination never to contribute support. But the July 14, 1941, evidence furnished little factual corroboration of such assertions.

Respondent admitted receipt of $1,400 in October, 1932, but swore categorically that those moneys have long since been consumed and that he has now no cash or bank account anywhere; his assignment to W. P. A. before the February 27, 1939, order presupposed his then already dearth of assets.

Respondent also testified that since the termination of his W. P. A. employment he has been wholly dependent upon the bounty of his friends Leo and Marion "Kelly," with whom he has resided for the past six years; that while working he contributed regularly to their household but recently only his services, consisting of assistance at premises on X avenue, Bronx. The owner ("King") of that building about four months ago nominally hired Mr. and Mrs. "Kelly" as janitors at a wage of twenty-five dollars a month plus a rent-free basement apartment of four rooms and bath (shared by respondent). But as Leo "Kelly" has outside employment which takes him away from the building all of each day except Sundays and Saturday afternoons and Mrs. "Kelly" is in an advanced stage of pregnancy, substantially all of the janitor work is being performed by respondent, who is seemingly content thus to provide for his own lodging and food without any thought of his obligations to petitioner and the child. As he has in fact been virtually the janitor of the "King" apartment house, respondent has the apparent ability to perform like duties on his own account and should seek at least a like, if not better, job for himself.

Upon the foregoing demonstration of the facts and the law, the following disposition is hereby made:

(1) The February 27, 1939, order of this court, based on respondent's now terminated W. P. A. job, is hereby suspended;

(2) The arrears of $730, as fixed on July 14, 1941, are hereby held in abeyance; subject, however, to petitioner's right to continue efforts to collect so much thereof as will have accrued on April 22, 1940 (the date of the commencement of the Supreme Court action and notwithstanding its pendency);

(3) Petitioner is hereby privileged to apply for a new order of this court within the limits of the May 23, 1940, Supreme Court order;

(4) Respondent is hereby placed upon probation to check his efforts to procure gainful employment;

(5) Upon his failure to make such *bona fide* efforts, he may be ordered to discharge the aforementioned arrears and be placed under

a new prospective order upon a potential earning capacity basis.

The foregoing disposition is, of course, without prejudice to petitioner's rights to proceed in the Supreme Court action. However, if she elect to move to punish respondent for contempt, she and her counsel should submit a copy of this memorandum to the Supreme Court justice presiding. Otherwise, the Supreme Court also might be used speculatively by petitioner, taking her chances in the one court, and then, being dissatisfied with the results, proceeding in the other court.

Nothing in this memorandum, however, should be construed as exonerating respondent from his seeming lack of effort to discharge his legal duty of support.

Notice shall be given to the parties and attorneys pursuant to the subjoined direction.