## In re FITZWATER'S GUARDIANSHIP.
### No. 10639.

District Court of the United States for the District of Columbia.

Feb. 11, 1947.

Joseph G. Dondero, of Washington, D. C., for petitioner.

HOLTZOFF, Associate Justice.

Mildred Marie Fitzwater, a widow, died on June 20, 1946, survived by one child, Edgar Allen Fitzwater, Jr., who was then seven years of age. The principal asset of her estate originated in a refund of contributions made by her to the Civil Service Retirement fund, aggregating the sum of $396.38. This amount was paid directly to the guardian of the minor child. In addition the mother left life insurance policies payable to her child, amounting to approximately $3,000.

The child's guardian presents a petition for leave to pay the mother's funeral expenses, amounting to the sum of $821; a bill of Callinger Municipal Hospital incurred during the mother's last illness, amounting to the sum of $32; and bills for nursing services rendered to the mother, amounting to $75.20. The last mentioned item has been paid by the sister of the deceased, and leave is sought to reii•,urse her.

The principal question involved is whether the mother's funeral expenses may be paid out of the estate of her minor child. There appear to be no reported cases on this point in the District of Columbia or Maryland.

At common law a child was not liable for the support of a parent. Thus, in Dominus Rex v. Munden, 1 St. 190, it was stated: "By the law of nature a man was bound to take care of his own father and mother; but there being no temporal obligation to enforce that law of nature, it was found necessary to establish it by Act of Parliament, * * *"

An early Act of Parliament, 43 Eliz. c. 2, created this legal obligation.

In the United States it has also been recognized that no such duty exists at common law. In Edwards v. Davis, 16 Johns., N.Y., 281, 285, this principle was enunciated as follows: "The duty of a parent to maintain his offspring, until they attain the age of maturity is a perfect common law duty. The liability of a child to support its parents, who are infirm, destitute, or aged, is wholly created by statute; and it has been truly said, that the statute imposes on such relatives duties unknown to the common law."

In Condon v. Pomeroy-Grace, 73 Conn. 607, 612, 48 A. 756, 757, 53 L.R.A. 696, it was stated that "by the common law there is no legal duty resting on a son to support a parent".

Many States have enacted legislation supplying this omission of the common law. No such statute, however, exists in the District of Columbia.

Only recently the Supreme Court of Pennsylvania held that "the estate of a minor is not liable for the funeral expenses of an indigent father", In re O'Leary's Estate, 352 Pa. 254, 257, 42 A.2d 624, 626. In that case the Court disallowed such a payment, although it was the wish of both the guardian and her ward, who was 19 years of age, to liquidate this obligation. Similar results were reached without discussion in Simpson v. Roberts, 205 Ill. App. 35, and New York Life Insurance Co. v. Gilmore, 40 Ga.App. 431, 149 S.E. 799.

There are some cases however, which, while recognizing that there is no legal liability on the part of the estate of a minor child for a parent's funeral expenses, nevertheless, hold that such a moral obligation exists and that, therefore, the child's guardian may be authorized to pay the reasonable burial expenses of the parent, if the parent's estate is insufficient for that purpose. In the case of In re Connolly's Estate, 88 Misc. 405, 150 N.Y.S. 559, an

eminent probate judge very forcibly formulated these principles in the following manner:

"The general guardian of the child paid the burial expenses of the child's mother, $67.50, to save her from a pauper's grave. Objection is made to the payment by the child's special guardian. * * * It seemed to me that it would be a scandal in the law if a child with an estate was not morally obligated under the circumstances.

"I find that Judge Reeve, as I supposed, in his excellent old book on 'Domestic Relations' now a classic in our country, states generally that it is the duty of children who are able so to do to support indigent parents. He places the liability, however, on the basis of the statute of 43 Elizabeth, generally re-enacted in America. * * * But does it make any real difference in this case whether the liability of an infant is recognized in law or only in equity? It is a recognized principle of equity that the Chancellor or the Master of the Rolls would make some allowance out of an infant's estate where the infant's family was indigent or in poor circumstances.

\* \* \* \* \* \*

"Thus it is apparent that equity will generally take into consideration, not only the infant's legal obligations, but his moral obligations as well, to his needy parents. How could it be otherwise in a refined system of jurisprudence in a civilized country? If an infant possessed of an estate is under moral obligations in equity to support his indigent parents, how much more, then, would it seem that he is under obligations to give to them the last of all earthly offices and obligations, a decent burial. If the infant is under such moral obligation, is the guardian, who is only the person sui juris of the infant, under opposed and different obligations?"

This persuasive opinion was followed by another probate judge in the same State, in the case of In re Neville's Estate, 147 Misc. 171, 263 N.Y.S. 528, 530, where this question was discussed as follows: "In the instant case, as before remarked, while the infant has not reached that age which the law arbitrarily fixes as the age of discretion and at and after which the infant becomes responsible for all contract obligations he may make, nevertheless being in this case the only next of kin and of the age when it may be fairly assumed without any undue stretch of the imagination that he will exercise sound judgment with respect to the burial of his father, the right to have charge of and direct the burial belongs to the infant. It follows, therefore, that possessing this right the infant is liable for reasonable burial expenses. In cases of this sort the court should be careful to see to it that the burial expenses are reasonable, keeping in mind the fact that the father died without funds and that the infant's estate is comparatively small."

It must be emphasized that we are not confronted with the question whether the estate of a minor may be compelled to meet the burial expenses of an indigent parent. The problem is merely whether the guardian in his discretion may be permitted to bear these expenses. Disbursements of trust funds are by no means invariably limited to items for which the beneficiary is legally obligated. At times the courts have allowed fiduciaries to apply assets of the estate to objects in respect to which there was no legal liability, if the beneficiary would probably have made the payments had he been free to act for himself. Langdon v. Brackenbury, 2 Colly. 446; In the Matter of Flagler, 248 N.Y. 415, 162 N.E. 471, 59 A.L.R. 649. On this theory, for example, an executor or administrator in his discretion may waive the statute of limitations in respect to a claim against a decedent's estate, D.C.Code 1940, § 18–515. Natural instincts and the dictates of humanity and morals create a filial duty to grant decent burial to a deceased parent. Religious precepts prescribe the performance of this task. It is to be assumed that if the minor were of age, he would freely and without hesitation bear the necessary expenses, if the parent's estate lacked sufficient assets for that purpose. Even if there is no legal obligation on the part of a minor child to pay a parent's funeral expenses, nevertheless, such a moral obligation clearly exists, if the parent's estate is insufficient to liquidate this indebtedness. It is proper for the guardian of a minor to recognize and fulfill his ward's moral duty

in this regard. Obviously, however, such action should be taken only under the supervision and authority of the court. Manifestly, it would be abhorrent that a parent should be buried in a pauper's grave, while his child has funds to pay for a decent burial. Yet this result might be possible if we adopt the strict rule represented by the case of In re O'Leary's Estate, supra, rather than the more liberal and humane doctrine formulated and applied in the cases of In re Connolly's Estate, and In re Neville's Estate, supra.

In view of the foregoing considerations, the petition will be granted to the extent of authorizing a payment of the mother's burial expenses in a reasonable amount. As such allowances out of a decedent's estate are limited by law to a maximum amount of $600, D.C.Code 1940, § 20—605, by analogy such payment will be authorized in the sum of $600, instead of in the sum of $821 as prayed for.

The bills for nursing services rendered to the mother will be disallowed, since the minor's estate is not liable for debts incurred by his mother prior to her death. For a similar reason, the bill of Callinger Municipal Hospital will likewise be disallowed.

Submit order in accordance with the foregoing.